Shirley BURTON, Petitioner–Appellee, Cross–Appellant,

v.

Sharon JOHNSON, Respondent–Appellant, Cross–Appellee.

Nos. 90–2016, 90–2019.

United States Court of Appeals, Tenth Circuit.

Nov. 1, 1991.

Charles H. Rennick, Asst. Atty. Gen. (Hal Stratton, Atty. Gen., with him, on the brief), Santa Fe, N.M., for respondent-appellant, cross-appellee.

Tova Indritz, Federal Public Defender, Albuquerque, N.M., for petitioner-appellee, cross-appellant.

Before McKAY, Chief Judge, ANDERSON, Circuit Judge, and BROWN, Senior District Judge.

WESLEY E. BROWN, Senior District Judge.[*]

Appellant Sharon Johnson, Warden for the State of New Mexico, appeals the order of the United States District Court for the District of New Mexico, granting Shirley Burton's petition for a writ of habeas corpus. Mrs. Burton cross-appeals from the order insofar as it denied some of the claims for relief contained in her federal petition.

Shirley Burton admitted that in the early hours of August 14, 1983, she shot and killed her husband, Robert Burton, in Roswell, New Mexico. She claimed that she did so because she believed from his past actions that she and her children were in immediate danger of great bodily harm, sexual abuse and death at the hands of her husband. She presented evidence of Robert's repeated physical, sexual and verbal assaults upon her and her two children, together with evidence that she suffered from "battered woman's syndrome," which contributed to her belief that she had to kill her husband in order to protect her children and herself from continued abuse. The state introduced evidence that Robert did not abuse his family, and that Mrs. Burton, having carefully planned the murder in advance, did not act in defense of herself and children. The jury convicted Mrs. Burton of murder in the first degree, and she was sentenced to life imprisonment.[1]

The issues presented in this appeal concern the manner in which the state trial court conducted the *voir dire* of the jury panel, and the discovery after trial that one of the jurors who served on the case was the victim of mental and physical abuse by her husband, and that this juror's children had also been abused by their father. Other issues involve the propriety of instructions and the claim that alleged cumulative error denied Mrs. Burton's right to fair trial.

The federal district court adopted the findings of the magistrate and found that Mrs. Burton's right to an impartial jury had been denied because a woman who served on the jury had suffered abuse in her own family. In addition, the court found that inadequate *voir dire* proceedings denied Mrs. Burton's right to an impartial jury and fair trial. The state elected not to retry Mrs. Burton within the 90 days allotted by the federal district court, she was released from custody, and is free pending this appeal.

The circumstances of the *voir dire* and other state court proceedings relating to Mrs. Burton's trial and conviction may be described as follows:

Because of the nature of her defense, Mrs. Burton's counsel filed a pretrial motion for individual, sequestered questioning of the jury panel on subjects pertaining to physical, emotional and sexual abuse of wives and children.[2] Attached to this motion was an affidavit of an expert in group dynamics and the jury selection process which related to the hesitancy of people to speak about sensitive subjects when others

[*] Honorable Wesley E. Brown, United States Senior District Judge, District of Kansas, sitting by designation.

1. Prior to trial, Mrs. Burton was offered a 7 year sentence in return for a plea of murder in the second degree. She declined this offer and proceeded to trial. See Exhibits to Item 49, Volume II Record, U.S. District Court.

On this appeal, there are two volumes of records from the District Court of Chaves County, New Mexico and the New Mexico Supreme Court, and 121 audiotapes of trial proceedings in Chaves County. In addition, there are two volumes of records arising from the federal habeas corpus proceedings in the District Court for the District of New Mexico.

These records will be referred to hereafter as "state records" or "federal records".

2. This motion requested that the court order individual *voir dire* on issues of publicity, child abuse and battered wives; that *voir dire* on other subjects be conducted in groups of 6 prospective jurors; and that the *voir dire* process be sequestered so that no other prospective jurors would be present except those being questioned.

are present. It was the opinion of this expert that "(i)n a trial with inflammatory issues and one in which potentially many of the members of the venire have attitudes or prejudices that could be hidden during the *voir dire*, the only possibility of obtaining a fair trial would be through extensive, open-ended, attorney-conducted, sequestered *voir dire.*" Vol. I, State Record, Page 100, Affidavit of Bennett.

At a hearing on this motion, the defense presented expert testimony to the effect that in the area of sensitive topics, members of the venire tend to make socially acceptable statements, and that in order to inquire into such topics as sexual abuse and wife beating, each prospective juror should be questioned separately, outside the hearing of other prospective jurors. This expert testified that over 20% of the American adult population has personally encountered a sex abuse or wife-battering situation, and that such people are not able to evaluate evidence of similar situations in an objective manner because an abused person tends to blame herself, and thus would judge the defendant in this case more harshly than would a juror without such personal experience or exposure to an abusive situation. Tape 2, 7/19/84, State Record.

The trial judge denied the defense motion to sequester and question each juror privately on sensitive matters. Instead, the court divided the jury panel into two groups, each to be *voir dired* as a whole, with a statement by the court advising that any juror could answer questions in private. Each party's *voir dire* was to be limited to one hour, with a possible extension if the attorney used his time "diligently." The defense request that the panel be required to complete a jury questionnaire was denied.[3]

The panel was divided into two groups with 29 prospective jurors in each. The court informed the first group that they could answer questions in private, but that

he preferred answers in open court because inquiries in chambers were difficult. Tapes 1 and 2, 7/24/84, State Record. Any juror who had discussed the case was questioned in chambers. Defense counsel questioned this panel about their attitudes concerning child abuse and neglect, and asked the entire panel if any of them had seen the effects of child abuse. Four answered affirmatively and discussed their experiences. Wife abuse was also discussed and counsel sought juror's opinions on self defense, etc. Defense counsel was stopped after one hour, and his request for more time to examine the panel about their knowledge of Robert Burton, potential witnesses and exposure to publicity was denied upon the ground that counsel had not been "diligent." Tape 5, and Chambers Tapes C & D, 7/24/84.

One of the jurors in this panel, Lisa Zoeller, told the court in chambers that she could not be an impartial juror because her father had abused her mother and the children, but her mother had not killed her father. Chambers Tape C. The juror Zoeller was excused by the court for "Cause." Vol. II, State Record, p. 191.

There was a similar *voir dire* of the second group, except that this time, the court asked more specific questions about publicity and their knowledge of prospective witnesses. Defense counsel told the members of this panel that any questions on sensitive subjects could be answered privately in chambers, and he then discussed child abuse, rape, wife beating, the reporting of violent acts against women and the subject of self-defense. Defense counsel specifically asked which jurors had personally seen the effects of child abuse. Carolyn Green answered that she had worked for a school where most of the staff and children had been abused in some way, describing the effects of child abuse which she had observed. Counsel then asked whether anyone else had "seen those kinds of, (sic), or had contact with child abuse or sexual abuse?". There was no

3. Vol. I, State Record, Motion for Supplemental Jury Questionnaire, filed 7/23/84. This questionnaire was designed to elicit general background information on each juror, so that during *voir dire* the defense counsel could concentrate his questions on wife and child abuse, and jurors' attitudes towards justifiable homicide, etc.

answer. Tape 8, State Record. Counsel again asked at a later time if there were "anybody else who has anything that they'd like to share either with the court individually or with me at this time in terms of the things we've talked about? ... We've talked about child abuse. We've talked about battered wives and other things." There was no response. No member of this panel discussed abuse in chambers. The defense challenged juror Green for cause upon the ground that she had experienced violence in her home, rape, and contact with abused children. The challenge for cause was granted, and Green was removed from the panel. Another juror in this panel, Mrs. Russell, was excused by the Court for cause because of her opinions about child abuse after having read an El Paso Times article. Vol. II, State Record, pp. 190 and 329.

At trial Shirley Burton and other witnesses testified about the violent and abusive nature of Robert Burton.[4] The jury heard evidence that during prior marriages, Burton had beaten two other wives and raped one of them, and had sexually molested a stepdaughter. Defendant Shirley Burton testified that during her marriage to Robert Burton she was beaten, raped and sodomized by her husband, and that he frequently beat their son, Gene, and her daughter, Elizabeth whom he had legally adopted. The children were beaten with fists, whips, rope, halter, belts, or whatever was handy. Mrs. Burton testified that she had tried to leave Robert several times, but had returned because of threats to her children, and that she had not contacted the police for protection because of his threats of retaliation if she did so. In January, 1983, Mrs. Burton learned that Robert had been sexually molesting Elizabeth and his son Gene for the past ten years. At trial, Elizabeth testified that her father had raped her twice and attempted to rape her on other occasions. Mrs. Burton obtained a gun and hid it under the mattress on her side of the bed, but Robert found it. The abuse continued. In May, 1983, Mrs. Burton returned home and found Robert attempting to rape Elizabeth. Mrs. Burton was then badly beaten and sodomized. In June, 1983, Robert cut Mrs. Burton with a knife and stitches were required. On August 12, 1983, Robert again attacked Elizabeth, and knocked her to the ground. On August 13, Mrs. Burton traveled 70 miles to Ruidoso and obtained a gun. She testified that her purpose was to stop Robert from hurting or killing her children and herself. She stopped on her way back home to Roswell and test-fired the gun. When she arrived in Roswell she parked three blocks from home, walked through the back gate, entered the patio door, and walked into the bedroom. She testified that Robert looked at her, said "If you're going to use that thing, use it," and rolled toward her. She fired several times, Robert jumped up and then fell, shouting obscenities. Mrs. Burton then ran out and drove back to her friends in Ruidoso. When police arrived at 3:00 a.m. on August 14, Robert was standing at the doorway. He told the police that it was too dark for him to see who shot him. He died later from three bullet wounds.

The defense presented expert testimony concerning "battered woman's syndrome" and the effects of long-term domestic violence. It was the experts' opinions that Shirley Burton lived in constant fear for herself and children and that she believed her only recourse was to kill her husband.[5]

The jury returned its verdict of first-degree murder on August 9, 1984. On August 29, the defense filed a motion for new trial, complaining, among other grounds, of inadequate *voir dire* of the

---

4. As noted, there was a conflict in the evidence concerning Mrs. Burton's motive in shooting her husband, and the state presented evidence that Robert Burton was a law-abiding, esteemed member of the community, without a reputation for violence. It should be noted that Mrs. Burton's testimony regarding physical abuse of herself and her children was corroborated by several witnesses. The Court has summarized the evidence presented by the defense for the purpose of evaluating the claim of juror bias and lack of impartiality.

5. Dr. Jeffrey Collins, a psychiatrist, and Dr. Rappaport, a clinical psychologist testified concerning Mrs. Burton's state of mind at the time she killed her husband.

jury, which was conducted in groups too large for meaningful discussion, and of the failure to give the defense adequate time to inquire into serious issues. The affidavit of Michael L. Stout, attorney for Shirley Burton, which accompanied the motion for new trial, informed the court in this manner: (Vol. II, State Record, pp. 298–299)

"I have contacted several jurors who sat during the trial of this cause and have discovered the following information:

A. At least three of the jurors have been close to situations concerning abuse of some sort which was not discussed during jury selection, including Mr. Smoot and Ms. Gonzales, as shown by their affidavits.

B. One juror, Ms. Townsend, stated that she had knowledge of abuse in a very "close relationship" to her. She stated that the person, though battered, is still alive and hasn't killed anyone. As a result of her knowledge she believes that battered people can cope with the situation without resorting to violence. She believes that this knowledge served as a springboard to her opinion that Shirley Burton 'could have handled' her situation without killing.

C. One juror stated that she has been the subject of long-standing abuse and is still married to the abuser, that the relationship is not as abusive as it once was, and that she did not wish to share the information in public for fear of harming her relationship or her family. Also her youngest child is presently seeing a counselor for emotional problems connected to the child's observation of the abuse of the juror and her other children. I would prefer to give the juror's name privately so as to not endanger her or her family."

The motion for new trial was denied on September 4, 1984.[6] (Vol. II, State Record, p. 306).

On September 5, 1984, the defense filed a second motion for new trial, reiterating that "Persons who have had experiences relevant to the issues in this case and which affect their impartiality in a case of this nature served as jurors in this case," in violation of Mrs. Burton's right to trial by impartial jurors. Vol. II, State Record, pp. 308–309.

In connection with this motion for new trial, the defense presented an affidavit filed October 1, 1984, from one juror, identified as "S.G.G." or "Mrs. G," who stated that she had "been the subject of wife abuse in the past and (is) presently subject to abuse to a lesser degree." This juror stated that her husband had a violent temper and verbally and physically abused the family, at one time hitting his son across the back with a golf club, which resulted in the need for medical attention. One of her children was seeing a counselor for emotional difficulties related to the abuse. This juror requested that her name and testimony be kept secret because she feared her husband might abuse her and her children if he found out that she was making this statement.[7]

At this hearing in chambers "Mrs. G" testified that when the panel was asked about child abuse during *voir dire*, that she did not "connect" her own experiences with the discussion and that she tried not to think about her own situation. (Tape 1, 10/1/84). It is significant that in October, two months after the trial, Mrs. G still feared that her husband would find out about her testimony and would harm her or her family.

The audiotape of this testimony in chambers reveals that even in that *in camera*

---

**6.** There is no audiotape in the record for the hearing held September 4, 1984.

**7.** Tapes relating to Mrs. G's testimony in chambers have been sealed to protect her anonymity.

The trial court ordered that the following affidavits should be sealed and not opened unless by order of the District or Supreme Court of New Mexico: (Vol. II, State Record, p. 396)

Four Jurors, filed 9–7–84
Michael L. Stout, filed 9–7–84
Beth Owens, filed 9–7–84
"One Juror", filed 10–1–84
Michael L. Stout, filed 10–3–84
The affidavits of Beth Owens, and the "Four Jurors" are not included in the state record filed in this appeal.

setting the juror was struggling with fear and great emotional distress because of her own abusive situation.

On October 9, the trial court denied the motion for new trial, finding that: (Vol. II, State Record, p. 337)

"1. None of the jurors was incapable of performing his or her duties as a juror.

"2. No juror, after being asked, withheld relevant information during voir dire."

Mrs. Burton's conviction was affirmed by the Supreme Court of New Mexico. That court found that defendant was not denied the opportunity to ask all relevant questions of the jury panel and that the trial court did not abuse its discretion in refusing to permit extensive questioning by defense counsel. That court further found that defendant had failed to establish partiality on the part of the juror, Mrs. G, that "no evidence is presented to demonstrate any prejudice" to defendant, and that there was no error in denying a new trial.

Mrs. Burton's federal application for a writ of habeas corpus was reviewed by William W. Deaton, United States Magistrate for the District of New Mexico, and his findings were adopted by the district court. The magistrate found that under the evidence, the situation of the juror, Mrs. G, was such that it made her impliedly biased, no matter how impartial she professed to be, and that Mrs. Burton had been deprived of her right to an impartial jury. In addition, the magistrate found that the one-hour restriction on *voir dire* and the refusal to allow sequestered *voir dire*, deprived the petitioner of her right to due process and an impartial jury.

■ The right to trial by an impartial jury is a fundamental concept of due process. That right, and the duty of strict inquiry into its application, were discussed in *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), where it was found that pretrial publicity had tainted the jury panel:

England, from whom the Western World has largely taken its concepts of individual liberty and of the dignity and worth of every man, has bequeathed to us safeguards for their preservation, the most priceless of which is that of trial by jury.... In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent jurors.... "A fair trial in a fair tribunal is a basic requirement of due process." .... In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as "indifferent as he stands unsworn".... His verdict must be based upon the evidence developed at the trial." (366 U.S. at 1642, 81 S.Ct. at 721, 6 L.Ed.2d at 755). (citations omitted)

■ While jurors need not be totally ignorant of the facts and issues involved, that fact does not foreclose inquiry into whether there has been a deprivation of due process of law. *Irvin v. Dowd, supra,* 366 U.S. at 723–24, 81 S.Ct. at 1642–43, 6 L.Ed.2d at 756.

In a civil case tried in a federal district court, a juror's son had sustained injury in an accident. The juror did not respond to a *voir dire* inquiry concerning "previous injuries ... that resulted in any disability or prolonged pain or suffering" to a juror's immediate family. The court of appeals found that the failure to respond had prejudiced plaintiffs' right of *peremptory challenge.* On appeal, the Supreme Court found that the fact that a juror might have been peremptorily challenged was not alone sufficient to reverse a conviction, and that in order to be entitled to a new trial in such a situation, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, *and then further show that a correct response would have provided a valid basis for a challenge for cause."* McDonough Power Equipment v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663, 671 (1984) (emphasis supplied).

In *Baca v. Sullivan,* 821 F.2d 1480 (10th Cir.1987) the *McDonough* rule was applied in ruling on a habeas corpus petition filed by a state defendant who complained that a juror's incorrect answers on a jury questionnaire and his failure to answer an oral

question during *voir dire,* so prejudiced his right to exercise *peremptory* challenges that he was denied a fair trial. The jury questionnaire asked if any member of the juror's family at present or in the past was or had been a member or employee of any law enforcement agency. Juror Beserra, who served as jury foreman, answered "no," although his brother had recently retired after working more than 30 years as a police officer. On *voir dire* the panel was asked "Are there any persons on this panel who have either a relative or a close friend who might work for a police department either in Albuquerque or some other city?". Eight people responded, but the juror Beserra remained silent, even though another juror mentioned that his brother was a retired military police chief.

In *Baca,* a panel of this court found that defendant had "failed to demonstrate that Beserra was partial or that defendant was denied his constitutional right to be tried by an impartial jury." 821 F.2d at 1483. In so doing, the court reviewed the state of the law in this manner:

> Although a prima facie showing of impairment of a party's peremptory challenges may entitle that party to an evidentiary hearing.... "(t)he fact that (the) juror ... might have been peremptorily challenged by defendant is not alone sufficient to reverse defendant's conviction," *Williams v. United States,* 418 F.2d 372, 377 (10th Cir.1969). In *McDonough Power Equip., Inc. v. Greenwood,* ... the Supreme Court stated that "it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination."
>
> "A party who seeks a new trial because of non-disclosure by a juror during *voir dire* must show actual bias." *United States v. Perkins,* 748 F.2d 1519, 1532 (11th Cir.1984), either "by

express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *id.* (quoting *United States v. Nell,* 526 F.2d 1223, 1229 (5th Cir.1976)). "(T)he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips,* 455 U.S. 209, 215 [102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982) ].... "At such a hearing, evidence of dishonesty and the subject matter of the nondisclosed information are relevant to the inquiry into alleged partiality." 821 F.2d at 1483.

In finding that there had been no denial of a fair trial, since the defendant failed to demonstrate that Beserra was partial, the *Baca* court noted that defendant did not contend that he was not given a full, fair and adequate evidentiary hearing, that the trial court found that juror Beserra was not partial, a finding entitled to the presumption of correctness, and that this finding was in fact supported by the record. In this respect, the court observed that the oral question at *voir dire* was presented in the present tense, so that Beserra had no objective duty to respond since his brother was no longer in law enforcement.

In the very recent case of *United States v. Gillis,* 942 F.2d 707 (10th Cir.1991), a federal defendant alleged that he had been denied a fair trial because members of the venire panel also sat on a panel in an earlier case in which he was tried on another narcotic charge, involving different conspirators.[8] The defendant's challenge of the entire panel for cause was denied and during *voir dire,* the trial judge did not inquire about knowledge gained from the first charge—instead, the jurors were asked generally if they knew "of any reason whatsoever" which could impair their impartiality. This court found that the "risk of a biased jury was significant," that the trial court had failed to conduct an

---

8. Of 32 prospective jurors on the panel at the second trial, at least 15 were present at the selection of the other jury one month previously. Three persons present on both panels served as trial jurors in the second trial. They had been excused during the voir dire examination at the first trial.

adequate examination "to negate the risk of prejudice," and that a new trial was required.

State court findings relating to juror bias "are factual determinations to which the presumption of correctness under 28 U.S.C.A. Section 2254(d) apply, although the constitutional standard of jury impartiality is a question of law." *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 2891 n. 12, 81 L.Ed.2d 847, 857 n. 12 (1984); *Lincoln v. Sunn*, 807 F.2d 805, 815–816 (9th Cir.1987). In *Lincoln, supra*, the state prisoner alleged that he was denied a fair trial because of excessive pretrial publicity. While noting that a "preconceived notion as to the defendant's guilt or innocence, without more, does not rebut a juror's presumed impartiality, as long as the juror can lay aside his or her impression and render a verdict on the evidence," the court observed that "a juror's assertion of impartiality is not dispositive, if the defendant can demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" 807 F.2d at 815. In *Lincoln*, the circuit held that the district court had an independent duty to ascertain whether the presumption of correctness should attach to the state court factual findings, and remanded the case for this purpose.

■ The state court finding that "No juror, after being asked, withheld relevant information during voir dire," and that "None of the jurors was incapable of performing his or her duties as jurors," is presumed to be correct unless "the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record." 28 U.S.C.A. Section 2254(d)(8). *Braley v. Shillinger*, 902 F.2d 20 (10th Cir.1990), *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In *Smith*, a juror who sat on the state jury which convicted Phillips of murder applied for a job as an investigator in the prosecutor's office during the trial. The prosecutor withheld the information from the trial court and defense counsel until after the trial. Following a hearing,

the trial judge found that the juror's application was an "indiscretion," but that it did not reflect a premature conclusion of guilt or prejudice against the defendant, "or an inability to consider the guilt or innocence" of the defendant based solely upon the evidence.

In finding no merit to Phillips' due process claim, the Supreme Court found the state trial court's findings to be "presumptively correct" under 28 U.S.C.A. Section 2254(d), and not to be disturbed "unless the federal habeas court articulates some basis for disarming such findings of the statutory presumption that they are correct and may be overcome only by convincing evidence." As to Phillips' claim, the Supreme Court noted that neither the federal district court, nor the court of appeals took any issue with the findings of the state court.

During the murder trial in the *Braley* case, *supra*, 902 F.2d 20, defense counsel received anonymous calls reporting that two jurors knew the victim's father, and that the father had two of the jurors "in his pocket." Affidavits were filed after trial indicating that the two jurors initially refused to vote for anything less than first-degree murder, and that these jurors eventually swayed the jury to a verdict of second-degree murder instead of manslaughter. At a hearing, the father and the two jurors testified and denied any contact or improper influence and the trial court denied the motion for new trial. The denial of habeas corpus relief was affirmed by a panel of this court upon a finding that the case was governed by the *Smith* decision, and that the petitioner had failed to establish any exception to the presumption provided by Section 2254(d).

■ In Mrs. Burton's case, the federal district court determined that the record did not support the conclusions of the state trial court. Our review of the record is in accord, and we here quote those findings in some detail, since they fairly summarize the state court proceedings: (Vol. II, Federal Record, Item 45, Magistrate's Amended Proposed Findings and Recommended Disposition, pp. 7–9):

13. In this case, the juror testified that when asked about child abuse she did not connect her abusive experiences with the *voir dire* discussion and that she tried not to think of her own situation by pushing her thoughts of her abusive experiences to the edge of her consciousness. Tape 1 (Chambers Oct. 1, 1984). The trial court found that the juror had honestly (not consciously) failed to mention her family's history of abuse during *voir dire.* The record, however, does not fairly support that finding of honesty. The *voir dire* centered around the topics of child and wife abuse. If so requested by a juror, the trial court permitted individual questioning on these sensitive topics. Yet the juror did not speak up at that time. Nonetheless, the juror was conscious of the fact that her family situation was abusive when she submitted an affidavit after the trial describing her situation. Affidavit of S.G.G. (filed Oct. 1, 1984). Under these circumstances, it is hard to believe that the juror honestly answered the abuse *voir dire* questions.[9] Had the juror spoken up, she would have been dismissed for cause as two other jurors had been who had revealed substantial exposure to family abuse. Since the record does not fairly support a presumption of correctness of the trial court's finding that the juror was honest, that presumption is overcome. Thus *McDonough* applies and petitioner is entitled to a new trial.[10]

Assuming that the juror had answered the *voir dire* question honestly, the record still would not have fairly supported the presumption of correctness of the trial court's finding of juror impartiality under *Baca.* Although the juror did not admit to bias, the facts in her case show such a close connection to the petitioner's that bias must be presumed.

First, the juror's affidavit stated that she has "been the subject of wife abuse in the past and (is) presently subject to abuse to a lesser degree." ... She also stated in her affidavit that her "youngest child is presently seeing a counselor for emotional difficulties which are related to the abuse that my other children and I have received and which he has witnessed." ... Moreover, the juror testified that her husband has a violent temper that results in his hitting and verbally abusing the family ... For example, her husband at one time hit her son across the back with a golf club ... The juror also indicated that she wanted her affidavit and testimony kept secret, because she feared her husband might do something bad to her and her children should he find out ... Furthermore, a forensic psychologist testified that people exposed to abuse would almost always unfairly judge a case involving abuse.

▬ Whether a juror's bias may be implied from the circumstances is a question of law for this court. *Smith v. Phillips,* 455 U.S. 209, 222, n*, 102 S.Ct. 940, 949, n*, 71 L.Ed.2d 78 (1982) (J. O'Connor, concurring); *Cummings v. Dugger,* 862 F.2d 1504, 1509 (11th Cir.1989). Doubts regarding bias must be resolved against the juror. *United States v. Nell,* 526 F.2d 1223, 1230 (5th Cir.1976), where the rule was so aptly expressed in this manner:

We have no psychic calibers with which to measure the purity of the prospective juror; rather, our mundane experience must guide us to the impartial jury promised by the Sixth Amendment. Doubts about the existence of actual bias should be resolved against permitting the juror to serve, unless the prospective panelist's protestation of a purge of preconception is positive, not pallid.

---

**9.** Mrs. G was a member of the second group of jurors which was *voir dired.*

**10.** As previously noted, the *McDonough* test for obtaining new trial because of the absence of an impartial jury requires that during *voir dire* a juror failed to honestly answer a material question, and secondly, that a correct response to

*voir dire* questions would have formed a valid basis for a challenge for cause.

Actual bias may be found either by an express admission, or by proof of specific facts which show such a close connection to the facts at trial that bias is presumed. *Baca v. Sullivan, supra,* 821 F.2d 1480, 1483.

We will not discuss at length the similarities of the experiences of Mrs. Burton and the juror, Mrs. G. It is sufficient to note that the abuse, both mental and physical, continued over a long period of time and that the juror, at the time of trial, was living in an abusive situation, fearing her husband's violent temper even at the time she was testifying in chambers. Petitioner has presented a number of cases involving implied bias in situations which are similar to those we have here. In *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.1979), the court found that the fact that a juror's sons used heroin barred any inference that juror could be impartial in a case in which defendants were charged with distributing heroin; in *Jackson v. United States*, 395 F.2d 615 (D.C.Cir.1968), a juror was presumed to be biased because he had been a lover in a love triangle similar to the one involved in the case at issue; in *United States v. Allsup*, 566 F.2d 68, 71–71 (9th Cir.1977) and *United States v. McCorkle*, 248 F.2d 1 (3rd Cir.1957), *cert. den.* 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77, *rehearing denied*, 355 U.S. 908, 78 S.Ct. 329, 2 L.Ed.2d 263, (1957), jurors were found to be biased because of their banking ties and robbery experience in cases involving bank robberies; and in *State v. LaRue*, 722 P.2d 1039, 1042 (Hawaii 1986), it was found that a victim of child abuse could not be impartial in a case involving sexual abuse of a minor.

■ Here, the record is clear that Mrs. G was dishonest in her response to questions on *voir dire*—this is true whether or not she simply did not, or could not respond properly because of her own emotional distress. This dishonesty, of itself, is evidence of bias. See *U.S. v. Colombo*, 869 F.2d 149, 152 (2d Cir.1989); *Consolidated*

*Gas & Equipment Co. of America v. Carver*, 257 F.2d 111, 115 (10th Cir.1958); *U.S. v. Scott*, 854 F.2d 697, 699 (5th Cir.1988).[11]

We likewise find that Mrs. G's failure to respond on *voir dire* denied Mrs. Burton a fair trial under the *McDonough* test, for it is clear that the juror did fail to answer a material question, and that a correct response would have provided a basis for a challenge for cause. Had Mrs. G responded honestly, she would have been excused for cause. That is exactly what happened to jurors Green and Zoeller who revealed their exposures to family and child abuse.

We find that the record establishes that Mrs. G's silence and the inherently prejudicial nature of her own family situation deprived Mrs. Burton of her right to a fair trial by an impartial jury, and that she is entitled to a new trial. Because of our finding on this issue, we need not and do not reach any other issues in the case.

The judgment of the district court requiring a new trial is AFFIRMED.

STEPHEN H. ANDERSON, Circuit Judge, dissenting.

I respectfully dissent because I think the majority opinion is not based upon proper constitutional analysis, and creates an erroneous rule of constitutional law.

We examine habeas challenges to state court proceedings, including *voir dire* of jurors, only for constitutional error, not for infractions of rules imposed on federal courts through the exercise of supervisory authority. *Mu'min v. Virginia*, —— U.S. ——, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). The Constitution permits state trial courts great latitude in conducting *voir dire*, including inquiry into subjects which might tend to show juror bias. *See id.* 111

---

**11.** The State relies upon *Brown v. United States*, 356 F.2d 230 (10th Cir.1966), where the brother of a juror had been murdered some years before trial. The court found no violation of the right to impartial trial where there was no evidence in the *voir dire* proceeding of the juror's relation to his brother and no information about how the brother's murder had affected the juror. The *voir dire* question concerned attacks upon the jurors "immediate family" and defense counsel did not explain what he meant by "im-

mediate family". In finding there was no abuse of discretion in denying a new trial, the court noted that "(t)he record here does not disclose that the juror either failed to give a truthful answer to the question propounded, or conceal a known disqualification." 356 F.2d at 233.

In the case now before us, the record is clear concerning abuse which directly affected the juror and her children, and the juror's refusal to give a truthful answer.

S.Ct. at 1904, 1906. "To be constitutionally compelled, however, it is not enough that such questions might be helpful. Rather, the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair." *Id.* at 1905 (citing *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975)).

Contrary to arguments advanced in this case, the Due Process Clause of the Fourteenth Amendment does not require state court judges to question jurors individually, or to question jurors in private, or to ask detailed, content based questions of jurors, or to question jurors or permit the questioning of jurors for any particular length of time, or even to permit peremptory challenges of jurors. *Id.*

Thus, it is clear at the outset that the *voir dire* examination conducted in this case did not violate the Fourteenth Amendment. There was extensive inquiry of the prospective jurors, and the general subject of abuse was raised, although inartfully. The jurors were all given an opportunity to express reservations either openly, or in a private meeting with the judge. That process was constitutionally sufficient.

The court below and the majority opinion both base their conclusions on a presumption of a bias, reasoning first that anyone who has experienced some sort of abuse personally or in their family is constitutionally disqualified from sitting on a case where some sort of abuse is raised as a defense. Second, the court below and the majority reasoned that the juror in question here, a "Mrs. G", "was *dishonest* in her response to questions on *voir dire,*" Maj. Op. at 1159 (emphasis added); therefore, she was constitutionally disqualified because of bias, and the dishonesty resulted in her not being stricken for cause. These arguments intertwine Sixth and Fourteenth Amendment considerations. I have no problem with that since the constitutional analysis as to bias is the same for each. In each instance, however, the court below and the majority have failed to address directly the right threshold question. *Mu'min* is instructive on the point.

The petitioner in *Mu'min* claimed that the trial court's failure to examine jurors individually regarding their exposure to pretrial publicity violated his Sixth and Fourteenth Amendment rights. He contended that the harm from possible pretrial knowledge of incriminating facts not admissible in evidence was even greater than the possible existence of racial or ethnic prejudice from the standpoint of necessary *voir dire.* In support, the petitioner cited the American Bar Association Standards for Criminal Justice. The Supreme Court rejected the premise of prejudice and disqualification underlying the Standards, pointing out that the wrong question was being asked. The court stated:

But, more importantly, the standards relating to *voir dire* are based on a substantive rule that renders a potential juror *subject to challenge for cause, without regard to his state of mind,* if he has been exposed to and remembers 'highly significant information' or 'other incriminating matters that may be inadmissible in evidence.' *That is a stricter standard of juror eligibility than that which we have held the Constitution to require.* Under the ABA standard, answers to questions about content, without more, could disqualify the juror from sitting. *'Under the constitutional standard, on the other hand, [t]he relevant question is not whether the community remembered the case, but whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant.'*

*Id.* 111 S.Ct. at 1907–08, (quoting *Patton v. Yount,* 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984) (emphasis added)).

Under this analysis, then, the majority opinion is clearly wrong to begin with when it states that "[h]ad Mrs. G responded honestly [that there had been some abuse in her family], she would have been excused for cause". Maj. Op. at 1159. She should only have been disqualified on constitutional grounds if questioning disclosed that "she had such fixed opinions that she could not judge impartially the guilt of the defendant." *Id.*

The same is true of implied bias. The court below and the majority *presume* disqualification without at least asking and directly analyzing the relevant question: Did Mrs. G in fact have such fixed opinions that she could not judge impartially? She indicated she could. The state courts found she could, and, neither the court below nor the majority even begin to demonstrate convincing proof of actual bias.

Of course, "[i]n those extraordinary situations involving implied bias, state-court proceedings resulting in a finding of 'no bias' are by definition inadequate to uncover the bias that the law conclusively presumes." *Smith v. Phillips,* 455 U.S. 209, 223 n.*, 102 S.Ct. 940, 949 n.* (O'Connor, J., concurring). But, if the majority is fashioning a conclusive presumption of bias on constitutional grounds in abuse cases, it does so without support, and I believe it to be bad constitutional law. Justice O'Connor described constitutional presumptions correctly, I believe, as follows:

> [t]here are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Id.* at 222, 102 S.Ct. at 948 (O'Connor, J., concurring). A case like the one before us hardly falls in the categories described, any more than a situation similar to *Mu'min* where a juror has been exposed to incriminating information about the defendant. People *are* capable of judging fairly on the evidence in these situations.

Cases cited by the majority such as *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) and *United States v. Gillis,* 942 F.2d 707 (10th Cir.1991) have either been distinguished in *Mu'min,* or have failed, as does the majority opinion here, to take *Mu'min* into account in their analysis. Other cases cited by the majority, including *Gillis,* are intertwined with

federal supervisory standards and do not present a pure constitutional analysis.[1] In short, there is no convincing authority which supports a constitutional presumption of bias in abuse cases.

Finally, I strongly disagree with the majority's "finding" that Mrs. G was dishonest, and its use of that finding to support an inference of actual bias. Honesty is a pure credibility finding which the state trial court which examined Mrs. G on the subject, had the right to make. It is not enough for the majority to recognize the rule that state court findings are entitled to a presumption of correctness, 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981); *Case v. Mondragon,* 887 F.2d 1388 (10th Cir.1989), and then to override that presumption because the majority thinks it can read the record better than the state courts can determine credibility first hand. The statutory presumption of correctness accorded to state court findings "may be overcome only by *convincing evidence.*" *Smith v. Phillips,* 455 U.S. 209, 218, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982) (emphasis added). And, issues of witness credibility, and findings based upon the court's opportunity to observe and evaluate the demeanor of the witness, are particularly subject to the presumption of correctness. *See Case v. Mondragon,* 887 F.2d 1388 (10th Cir.1989). "Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying." *Patton v. Yount,* 467 U.S. 1025, 1038 n. 14, 104 S.Ct. 2885, 2892 n. 14, 81 L.Ed.2d 847 (1984).

An examination of the *voir dire* conducted in this case discloses that at best it was ambiguous with respect to the subject of physical abuse, as opposed to sexual abuse, or sexual abuse coupled with other physical abuse. Mrs. G testified at the post-trial hearing that her situation did not involve sexual abuse.

As the majority opinion acknowledges, at the hearing Mrs. G testified that when the

---

1. In *Gillis,* moreover, the pertinent subject was not even addressed on *voir dire.* Here, it was.

panel of prospective jurors was asked about child abuse she did not connect her own experiences with the discussion. She denied deliberately withholding any requested information and, in fact, did not recall ever being asked on *voir dire* whether she had been a victim of wife abuse. She stated that she just did not connect her situation with the questions asked. She stated further that she never felt she had been asked a question on *voir dire* that called for an answer on the subject of abuse in her own family. She also said that she believed she would have responded had she thought that a response was called for.

In short, the most that can be said about the *voir dire* inquiry is that it was ambiguous with respect to putting Mrs. G in a position of a required response on the subject of abuse in her own family. She certainly gave no dishonest answer, since she remained silent. And, her silence, as found by the trial court which had an opportunity to observe her demeanor, and had first hand knowledge of the *voir dire* inquiry, was not dishonest. *See Baca v. Sullivan,* 821 F.2d 1480 (10th Cir.1987); *Brown v. United States,* 356 F.2d 230 (10th Cir.1966).

Following the hearing, as the majority opinion notes, the state trial court specifically found that "no juror, after being asked, withheld relevant information during *voir dire.*" The court further found that "none of the jurors was incapable of performing his or her duties as a juror." On direct appeal, the New Mexico Supreme Court upheld those determinations, and further found that their was no evidence demonstrating prejudice.

I believe it to be indefensible, on these facts, for the federal courts to make a finding on the honesty of this juror, directly at odds with the state court findings, and then to draw conclusions from that finding. Certainly there is no "convincing evidence" to support the majority's finding, as required by *Smith v. Phillips. See* 455 U.S. at 218, 102 S.Ct. at 946–47.

Stripped of extraneous trappings, the majority opinion in this case stands only for the proposition, as a matter of constitutional law, that prospective jurors who have been abused in any way or who have had abuse in their families in some way at some time are automatically disqualified from sitting on cases in which abuse might arise as a defense, on the presumption that such prospective jurors are incapable of being impartial within the meaning of the Sixth Amendment. I disagree with such a rule, and with this supervisory/evidentiary resort to presumptions. "[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove *actual* bias." *Smith v. Phillips,* 455 U.S. at 215, 102 S.Ct. at 945 (emphasis added). "[P]reservation of the opportunity to prove *actual* bias is a guarantee of a defendant's right to an impartial jury." *Id.* at 216, 102 S.Ct. at 945 (quoting *Dennis v. United States,* 339 U.S. 162, 171–72, 70 S.Ct. 519, 523, 94 L.Ed. 734 (1950) (emphasis added)).[2] Except in the most egregious circumstances, federal habeas courts ought to stay out of the business of speculating and presuming as to the state of mind of state court jurors, and overriding the first hand judgment of state courts on the actual facts of the subject.

---

**2.** Decisions to hold hearings, of course, and the conduct of such hearings, must be consistent with the rules of evidence applicable to post-

verdict inquiry of jurors. *See, e.g., Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987).