# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3901

_____

|  |  |  |
|---|---|---|
| George L. Fuller, | * | |
|  | * | |
| Appellant, | * | |
|  | * | |
| v. | * | Appeal from the United States |
|  | * | District Court for the Western |
| Michael Bowersox and Jeremiah | * | District of Missouri. |
| (Jay) Nixon, Attorney General, | * | |
| State of Missouri, | * | |
|  | * | |
| Appellees. | * | |

_____

Submitted: June 17, 1999

Filed: February 3, 2000

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and KYLE,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In 1991, a state court jury convicted George Fuller of murder, assault, and armed criminal action for events surrounding the death of one man and the wounding of

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

another.  A Missouri appellate court affirmed the convictions.  *See State v. Fuller*, 837 S.W.2d 304 (Mo. Ct. App. 1992).

A year later, Mr. Fuller petitioned the state trial court for postconviction review under the state rule then in effect.  The trial court denied the petition as untimely. Mr. Fuller filed a *pro se* notice of appeal of that denial in the trial court but never paid a docket fee or received an order granting *in forma pauperis* status from the trial court. Through counsel, Mr. Fuller subsequently moved in the state appellate court for leave to file an untimely appeal of the trial court's denial of his petition for postconviction review.  The state appellate court denied the motion for leave to file an untimely appeal.

Mr. Fuller then petitioned for federal habeas corpus review under 28 U.S.C. § 2254.  He claimed, first, that his sixth amendment right to an impartial jury and his fourteenth amendment right to due process were violated by a juror's failure to disclose the juror's mother's employment at the county jail where Mr. Fuller was held during the trial and by the same juror's failure to disclose his own previous employment with a county or state law enforcement agency.  Second, Mr. Fuller contended that his sixth amendment right to effective assistance of counsel and his fourteenth amendment right to due process were violated by his state trial lawyer's failure to locate, interview, procure for trial, or use at trial various potential witnesses and exhibits for the defense and by his state trial lawyer's failure to object under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the state prosecutor's peremptory challenge of a black woman juror.

The district court held that Mr. Fuller suffered no violation of his sixth amendment right to an impartial jury or his fourteenth amendment right to due process with respect to the juror's failure to disclose.  The district court further concluded that although Mr. Fuller's sixth and fourteenth amendment claims in regard to ineffective assistance of counsel were never raised through a timely petition for postconviction review in the state courts, that default was excusable in the particular circumstances of Mr. Fuller's case.  On the merits of the claims of ineffective assistance, however, the

district court held that even assuming deficient performance by Mr. Fuller's state trial lawyer, Mr. Fuller failed to show the prejudice necessary to prevail on those issues. *See*, *e.g.*, *Strickland v. Washington*, 466 U.S. 668, 687, 692-93, 696-97, 700 (1984). The district court therefore denied Mr. Fuller's petition for relief under 28 U.S.C. § 2254.

Mr. Fuller appeals all of the holdings of the district court. He also contends that the district court improperly refused to grant him an evidentiary hearing on his claims of ineffective assistance. We affirm the judgment of the district court.

I.

At Mr. Fuller's state trial, the court instructed the jurors during *voir dire* that their answers to the lawyers' questions must be "not only ... truthful but ... full and complete." The trial court also stated that if any juror "later on, during the [*voir dire*] examination, ... remember[ed] something which [that juror] failed to answer before or which would modify an answer," the juror should raise his or her hand and answer further questions. Finally, the trial court warned the jurors that any "failure ... fully and truthfully to answer questions during [the *voir dire*] stage of the trial could force the parties to have to retry the [case] at some future date." Mr. Fuller contends that one juror's failure to answer truthfully during *voir dire* deprived him of the impartial jury guaranteed by the sixth amendment and by the fourteenth amendment right to due process.

The state prosecutor asked during *voir dire* if any of the jurors had "preconceived feelings" about the credibility of police officers. No one responded. The prosecutor also asked about the jurors' current and previous employment. The juror whom Mr. Fuller challenges in this case stated that he had recently taken a job as "a boxer and a packer" and, "before that," had worked at "Williams' shop." At that point, the prosecutor turned to another juror and began asking questions of that juror.

Mr. Fuller's trial lawyer asked during *voir dire* whether any of the jurors had "ever been engaged in law enforcement work." No one responded. Mr. Fuller's lawyer then asked if any of the jurors was "closely related to or good friends with a police officer." Although several jurors responded, the juror in question did not. After *voir dire*, the lawyers made their challenges for cause and their peremptory challenges. The trial court then swore in the jurors who were to decide Mr. Fuller's case. The juror in question was among them. As noted above, the jury found Mr. Fuller guilty of murder, assault, and armed criminal action.

In a motion to the trial court for a new trial, Mr. Fuller contended that he "was denied a fair trial by a fair and impartial jury in that [one] juror ... failed to reveal on *voir dire* examination that his mother was an employee of the [county jail], ... that she was acquainted with [Mr. Fuller, and that] during the trial said juror was observed to have communicated with his said mother." In a hearing in the trial court on that motion, the juror in question acknowledged that his mother worked at the county jail (apparently as a jailer or some type of guard) at the time of Mr. Fuller's trial.

The juror stated, however, that he did not disclose that information during *voir dire* because he "was not asked." He went on to say that the only question in that regard that he remembered was whether any of the jurors was "related to or friends of" any officers in the city police department. He also acknowledged that he lived next door to his mother but stated that, although his mother knew that he was serving on a jury, he never discussed the trial with her or even told her who was on trial.

The juror denied that he "in any way intend[ed] to conceal the fact that [his] mother worked for the [county jail]." He also reiterated that he had interpreted the question about being "related to any law enforcement officials or [knowing] of any" as applying solely to police officers. (We note from the trial transcript that, contrary to the recollection of Mr. Fuller's trial lawyer at the hearing, the actual question from *voir dire*, posed by Mr. Fuller's trial lawyer, was indeed whether any juror was "closely

-4-

related to ... a police officer."  The only question from Mr. Fuller's trial lawyer dealing with whether any juror personally had "ever been engaged in law enforcement work" included no references to relatives of jurors.)

The juror's mother also testified at the hearing on Mr. Fuller's motion for a new trial.  She stated that she had worked at the county jail for 15 years, including the period when Mr. Fuller was on trial, and had a badge but had no authority to carry a gun.  She also acknowledged that she knew that her son was serving on a jury at that time, because "one of the officers" had told her, but that she did not know for which trial her son was serving.  Finally, she said that she and her son did not discuss the fact that he was serving on a jury, that she did not know Mr. Fuller, and that she and her son did not discuss Mr. Fuller's case.

The trial court made no specific findings, either at the hearing on Mr. Fuller's motion for a new trial or in the written order of judgment.  The court did, however, deny the motion.  On direct appeal, Mr. Fuller contended that he "was denied a fair trial before an impartial jury" because he did not possess "information which [he] was entitled to know" before exercising his peremptory challenges – namely, the fact that the juror's mother worked at the county jail at the time of the trial and the fact that the juror himself had formerly worked for some type of law enforcement agency. (Although Mr. Fuller did not explicitly list the latter ground in the trial court as a justification for a new trial, he did elicit from the juror during the hearing the fact that the juror had at one time worked for a county or state law enforcement agency; the juror's testimony was insufficiently specific for us to determine which.)

The state appellate court discussed both grounds in its opinion, *see Fuller*, 837 S.W.2d at 308, affirming Mr. Fuller's convictions.  The appellate court held, with respect to the juror's failure to disclose the information about his mother, that "the nondisclosure ... appears unintentional," *id.*  With respect to the juror's failure to disclose his own previous employment with a law enforcement agency, the appellate

court noted that "there was no evidence as to what [the juror's] former employment had consisted of ... such that [the juror] failed to make a [relevant] disclosure," *id.* The appellate court held, therefore, that "the trial court did not abuse its discretion in denying the motion for new trial," *id.* Finally, the appellate court held that the trial court had made an "implied finding of no prejudice resulting from [the juror's] presence on the jury," *id.*, and declined to disturb that implicit finding, *id.*

In Mr. Fuller's federal habeas complaint, he alleged that his sixth and fourteenth amendment rights were violated by the juror's failure to disclose both of the "material" facts discussed above. Mr. Fuller further contended that if those facts had been disclosed, they "would have provided a valid basis for a challenge for cause, as well as giving [him] grounds to exercise a peremptory challenge, as [such disclosures] would have revealed [the juror's] potential bias."

II.

As the district court noted in its opinion denying relief on the issue of juror bias, Mr. Fuller's burden was not only to show that a juror failed to disclose a material fact during *voir dire*, *see McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984), but also to establish that the juror was in fact biased, *see Smith v. Phillips*, 455 U.S. 209, 215 (1982). In other words, "a juror's [apparent] dishonesty is not a [sufficient] predicate to obtaining a new trial." *Cannon v. Lockhart*, 850 F.2d 437, 440 (8th Cir. 1988). Instead, because the "central concern" in habeas cases is "the fundamental fairness of the proceeding," *Strickland*, 466 U.S. at 697, "[t]he focus is on bias," *Cannon*, 850 F.2d at 440, and "only those reasons [for failing to disclose information] that affect a juror's impartiality can truly be said to affect the [fundamental] fairness of a trial," *McDonough Power Equipment Co.*, 464 U.S. at 556. For habeas corpus purposes, such "bias may be found either by an express admission, or by proof of specific facts which show such a close connection to the facts at trial that bias is presumed." *Burton v. Johnson*, 948 F.2d 1150, 1158 n.10 (10th Cir. 1991).

In the state court hearing on Mr. Fuller's motion for a new trial, the questioning and testimony dealt almost exclusively with what information the jurors were asked for and why the juror in question did not disclose the information about his mother's employment. Neither party asked him during the hearing why he did not disclose the information about his own previous employment or even what type of position he had held in the relevant agency (and, indeed, Mr. Fuller did not specify that ground as a basis for a new trial until his direct appeal). Nor did either party ask whether, in the juror's evaluation of the evidence, he might have given more credibility to law enforcement officers or might have been influenced either by his knowledge of state law enforcement procedures or by his previous affiliation with the county or state as an employee.

As noted above, the state trial court made no explicit findings but denied Mr. Fuller's motion for a new trial. On direct appeal, the state appellate court found that the juror's failure to disclose the information about his mother's employment was "[a]t worst ... unintentional," *Fuller*, 837 S.W.2d at 308. The appellate court further found that with respect to the juror's failure to disclose his own previous employment with some type of law enforcement agency, "no evidence in the record" showed that the juror's previous employment fell within any of the categories of law enforcement experience specified during *voir dire*. *Id.* It is therefore not unreasonable to conclude, we believe, that the appellate court found, by implication, that the juror's failure to disclose his previous employment was also unintentional. Finally, the appellate court held that the trial court had made an "implied finding of no prejudice" to Mr. Fuller from the juror's presence on the jury and thus that it was not an abuse of discretion under Missouri law to deny Mr. Fuller's motion for a new trial. *Id.*

The district court gave a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), to the state appellate court's finding that the juror's failure to disclose the information about his mother and himself was unintentional. In his appeal to our court, Mr. Fuller does not seem to challenge the correctness of that finding. What he argues instead is

that the state trial court never considered the question of actual or presumed bias, *see Burton*, 948 F.2d at 1158 n.10; that accordingly there was no basis in the record for the state appellate court's conclusion, *see Patton v. Yount*, 467 U.S. 1025, 1038 (1984), *see also Cannon*, 850 F.2d at 441, that the trial court made an "implied finding of no prejudice" to Mr. Fuller; that the state appellate court thus rendered "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § 2254(d)(2); that in consequence there was "manifest error," *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991) (additional quotation marks and sources omitted), in the finding of the state appellate court that the juror in question was not actually or presumably biased; and that, as a result, that finding should not be given the presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), to which it would otherwise be entitled, *see Smith*, 455 U.S. at 218; *see also Patton*, 467 U.S. at 1037-38 n.12, 1038, and *Cannon*, 850 F.2d at 440-41.

With respect to the possibility of either actual or presumed bias, Mr. Fuller first offers in our case an affidavit from a person who states that at the time of the trial, he was an inmate at the county jail and overheard the juror's mother commenting that Mr. Fuller "should not be so nasty to her because his ... life was in her son's hands." As the state points out, however, this affidavit was made approximately two years after Mr. Fuller's convictions were affirmed on direct appeal (and approximately three years after the hearing on his motion for a new trial) and, therefore, was never presented or even offered to the state courts. Mr. Fuller gives no explanation for not procuring this affidavit earlier, and he is therefore barred from offering it now. *See Bannister v. Armontrout*, 4 F.3d 1434, 1442 (8th Cir. 1993), *cert. denied*, 513 U.S. 960 (1994); *see also Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-9, 11 (1992), and *Stewart v. Nix*, 31 F.3d 741, 743 (8th Cir. 1994).

Mr. Fuller also suggests that because the juror worked at one time for a county or state law enforcement agency and therefore probably had specialized knowledge of state law enforcement procedures, it can be presumed that the juror harbored a bias in

favor of the prosecution. *See United States v. Scott*, 854 F.2d 697, 699-700 (5th Cir. 1988), and *United States v. St. Clair*, 855 F.2d 518, 522-23 (8th Cir. 1988); *see also United States v. Wood*, 299 U.S. 123, 134 (1936). We believe that the connections that Mr. Fuller posits with respect to this issue are simply too speculative to allow, as a matter of law, a presumption of bias on the part of the juror in question. *See Tinsley v. Borg*, 895 F.2d 520, 528-29 (9th Cir. 1990), *cert. denied*, 498 U.S. 1091 (1991); *see also Hunley v. Godinez*, 975 F.2d 316, 319 (7th Cir. 1992) (*per curiam*), summarizing cases where circumstances failed to allow a presumption of bias. We therefore affirm the district court's conclusion that no violation occurred with respect to Mr. Fuller's sixth amendment right to an impartial jury and his fourteenth amendment right to due process in this regard. Accordingly, we need not reach the question of whether the state appellate court's factual finding on the issue of juror bias was entitled to a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1).

III.

Mr. Fuller also asserts that his sixth amendment right to effective assistance of counsel and his fourteenth amendment right to due process were violated by various failures of his trial lawyer with respect to the use of potential witnesses and exhibits and with respect to jury selection. In response, the state asserts that because these claims were dismissed by the state courts on a procedural basis, Mr. Fuller is barred from presenting them in a federal court. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Mr. Fuller replies that his particular circumstances provide sufficient cause and prejudice to overcome the procedural bar. *See id.* at 750-51. We disagree.

Under the relevant Missouri rules, a convicted defendant may pursue a direct appeal grounded on alleged trial errors of any nature. *See* Mo. S. Ct. R. Crim. P. 30.01(e), Mo. S. Ct. R. Crim. P. 30.06(a), Mo. S. Ct. R. Crim. P. 30.06(d). In a direct appeal, it is the duty of the defendant to order or obtain the trial transcript, and to file it in the appropriate state appellate court. *See* Mo. S. Ct. R. Crim. P. 30.04(c), Mo. S. Ct. R. Crim. P. 30.04(e), Mo. S. Ct. R. Crim. P. 30.04(f). Mr. Fuller's trial

lawyer filed the trial transcript for the direct appeal in the relevant state appellate court in September, 1991, but evidently never notified Mr. Fuller of that file date.

A convicted defendant who believes that his convictions are invalid because of errors of a constitutional dimension, such as ineffective assistance of counsel under the sixth amendment, may in addition petition for postconviction relief, which is a remedial avenue in the state courts that is both separate and different from a direct appeal, and may also be approximately contemporaneous with the direct appeal. *See* Mo. S. Ct. R. Crim. P. 29.15(a) (West 1994), the applicable rule at the time of Mr. Fuller's case. In contrast to a direct appeal, a petition for postconviction relief goes to the trial court. *Id.*

A petition for postconviction relief must be filed with the trial court "within thirty days after the filing of the [trial] transcript" in the state appellate court that is considering the direct appeal. *See* Mo. S. Ct. R. Crim. P. 29.15(b) (West 1994). The petition for postconviction relief may not be filed after that 30-day period, *see id.*; the Missouri rules of criminal and civil procedure that ordinarily allow for extensions of time, *see* Mo. S. Ct. R. Crim. P. 20.01(b)(2), Mo. S. Ct. R. Civ. P. 44.01(b), do not apply with respect to petitions for postconviction relief. *See Cowans v. State*, 778 S.W.2d 758, 761-62 (Mo. Ct. App. 1989). The time limits in Mo. S. Ct. R. Crim. P. 29.15(b) (West 1994) are thus "mandatory and preemptive," *id.* at 762. *See also Smith v. State*, 887 S.W.2d 601, 602 (Mo. 1994) (*en banc*), *cert. denied*, 514 U.S. 1119 (1995). Mr. Fuller did not petition for postconviction relief within the allowable 30-day period.

In June, 1993, Mr. Fuller requested leave to file an untimely petition for postconviction relief. Because the petition (if permitted) would have been filed more than 30 days (indeed, almost two years) after Mr. Fuller's trial transcript was filed in the state appellate court considering his appeal (indeed, Mr. Fuller's appeal had been decided during the previous year), the trial court denied Mr. Fuller's request. Three

weeks later, Mr. Fuller proffered a notice of appeal of the trial court's denial, but failed to pay a docket fee or to move in the trial court for *in forma pauperis* (IFP) status with respect to the appeal until after another two weeks.

In order to be *effective*, a notice of appeal must be accompanied by a docket fee or an order granting IFP status with respect to the appeal. *See* Mo. S. Ct. R. Crim. P. 30.01(d), Mo. S. Ct. R. Civ. P. 81.04(c). In order to be *timely*, an effective notice of appeal must be filed in the trial court within 10 days of the order to be appealed from. *See* Mo. S. Ct. R. Crim. P. 30.01(d), Mo. S. Ct. R. Civ. P. 81.04(a). Since even an effective notice of appeal would have been untimely at the point when Mr. Fuller moved for IFP status, the trial court denied that motion. Thus, for lack of a docket fee or an order granting IFP status, Mr. Fuller's notice of appeal never became effective. Almost two months later, Mr. Fuller moved, in the relevant state appellate court, for leave to file an untimely appeal of the trial court's denial of the request to file an untimely petition for postconviction relief. *See* Mo. S. Ct. R. Crim. P. 30.03, Mo. S. Ct. R. Civ. P. 81.07(a). The state appellate court denied the motion.

IV.

Mr. Fuller does not dispute that his proffered petition for postconviction relief and his proffered notice of appeal were untimely. He asserts, however, that the procedural bar allegedly applicable to his claims of ineffective assistance of counsel is ultimately attributable to his trial lawyer's failure to notify him of the date when the trial transcript was filed with the relevant state appellate court. That failure, he contends, deprived him of the information that he needed in order to determine the deadline for his petition for postconviction relief. He thus argues that he has demonstrated "cause" sufficient to overcome a procedural bar in our case. *See Coleman*, 501 U.S. at 750-51. We disagree.

Mr. Fuller seeks the shelter of *Coleman* by contending that his lawyer's failure to notify him of the relevant date was a breach of a duty that the lawyer owed to him

in pursuing the direct appeal, a context in which Mr. Fuller is constitutionally entitled to the effective assistance of counsel, *see Evitts v. Lucey*, 469 U.S. 387, 397 (1985). We reject that position. Mr. Fuller's trial lawyer had no duty to notify Mr. Fuller when the trial transcript was filed because that fact was of no significance to the appeal.

The filing date was no doubt significant to Mr. Fuller's desire to file a petition for postconviction relief, but there is, of course, no right to counsel in that context, *see Coleman*, 501 U.S. at 752. The failure of Mr. Fuller's trial lawyer to notify him of the date in question, therefore, cannot serve as "cause" to defeat the procedural bar. We thus decline to consider the merits of Mr. Fuller's claims with respect to alleged ineffectiveness of counsel at trial, and we need not consider Mr. Fuller's assertion that he was entitled to an evidentiary hearing in the district court.

V.

For the reasons stated, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.