**PUBLISH**

**UNITED STATES COURT OF APPEALS**

Filed 11/5/96

**TENTH CIRCUIT**

_____

LARRY GONZALES,

     Petitioner-Appellant,

v.

JOHN THOMAS, Warden; ATTORNEY
GENERAL OF THE STATE OF NEW
MEXICO,

     Respondents-Appellees.

No. 95-2279

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-91-339-JP)**

_____

Joseph W. Gandert, Assistant Federal Public Defender, Albuquerque, New
Mexico, for Petitioner-Appellant.

Max Shepherd, Assistant Attorney General (Tom Udall, Attorney General of New
Mexico, with him on the brief), Santa Fe, New Mexico, for Respondents-
Appellees.

_____

Before **TACHA, BALDOCK** and **BRORBY**, Circuit Judges.

_____

**BRORBY**, Circuit Judge.

_____

Larry Gonzales, a prisoner of the State of New Mexico, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Gonzales claimed his state conviction violated, among others,[1] his right under the Sixth Amendment to an impartial jury. The respondent conceded Mr. Gonzales had exhausted his state remedies. After an evidentiary hearing, a federal magistrate judge issued proposed findings and recommended Mr. Gonzales's petition be dismissed with prejudice. Over Mr. Gonzales's objections, the district court adopted the magistrate judge's proposed findings and dismissed the habeas petition with prejudice. After Mr. Gonzales filed his notice of appeal, the district court issued an order denying him a certificate of probable cause. Finding that Mr. Gonzales has made the requisite "substantial showing of the denial of" his constitutionally protected right to an impartial jury, 28 U.S.C. § 2253, we grant Mr. Gonzales a certificate of appealability. *See* Antiterrorism and Effective Death Penalty Act of 1996 § 102, Pub. L. No. 104-132, 110 Stat. 1214 (amending 28 U.S.C. § 2253); *Lennox v. Evans*, 87 F.3d 431 (10th Cir. 1996). As explained below, we affirm the judgment of the district court.

---

[1] Though Mr. Gonzales also originally raised other issues, he later withdrew all contentions except his impartial jury claim.

I. *Factual & Procedural Background*

In October 1988, Mr. Gonzales was charged by information in the Seventh Judicial District of the State of New Mexico with three counts. Count One accused Mr. Gonzales of criminal sexual penetration in violation of N.M.S.A. § 30-9-11(A). Count Two alleged Mr. Gonzales used a firearm to commit Assault with Intent to Commit a Violent Felony in violation of N.M.S.A. §§ 30-3-3 and 31-18-16. Count Three accused Mr. Gonzales of Bribery of a Witness with the use of a firearm in violation of N.M.S.A. §§ 30-24-3(C) and 31-18-16 or N.M.S.A. §§ 30-16-9(A) and 31-18-16. Mr. Gonzales pleaded not guilty to the charges against him, and the case was tried to a jury.

The charges against Mr. Gonzales arose from a visit to his wife's cousin, the victim.[2] On the evening of the incident, the victim and her young daughter were at the victim's sister's apartment. The victim was babysitting her niece. Mr. Gonzales arrived at the apartment carrying two bottles of an alcoholic beverage composed of orange juice and whiskey. Mr. Gonzales and the victim played a

---

[2] The accounts we give in this opinion of the incident leading to Mr. Gonzales's conviction are based on Mr. Gonzales's candid admissions in his brief with respect to the evidence revealed at his trial. Given that the New Mexico state trial transcript was forwarded to this court in the form of thirty-six audio tapes, we appreciate the candor of Mr. Gonzales and his attorney. The respondent has not disputed Mr. Gonzales's characterization of the evidence.

drinking game that caused the victim to become intoxicated. The victim testified that after the game ended Mr. Gonzales made sexual advances that she resisted. According to the victim, Mr. Gonzales knocked her unconscious and when she regained consciousness, she discovered he was raping her. The victim also testified that Mr. Gonzales threatened to harm her daughter and niece with a gun unless she submitted to him. Though the victim claimed Mr. Gonzales molested the two girls, the record does not indicate he was ever charged for such a crime. At some point during the evening, the victim's sister called home and the victim answered the phone. According to the victim, Mr. Gonzales threatened her with a gun and said, "Don't tell her I'm here."

The New Mexico jury found Mr. Gonzales guilty of Counts One and Three, but found he had not used a firearm in the commission of Count Three. The jury found Mr. Gonzales not guilty of Count Two. After accepting the jury's verdicts, the state court sentenced Mr. Gonzales to eighteen years of imprisonment for Count One, three years for Count Three -- the two sentences to run concurrently -- plus two years of parole following incarceration.

Sometime after his conviction, Mr. Gonzales discovered one of the jurors for his trial had been a rape victim prior to serving on the jury and had discussed

her rape experience during the jury's deliberation of his case. In his federal habeas petition, Mr. Gonzales claimed this juror improperly concealed her rape experience during voir dire and that had she divulged this information, she would have been subject to a valid challenge for cause. Mr. Gonzales requested the district court to conduct an evidentiary hearing on the issue of whether his right to an impartial jury had been violated. In the course of Mr. Gonzales's direct appeals and state habeas proceedings in New Mexico state courts, he had not received such a hearing. Pursuant to Mr. Gonzales's request, a federal magistrate judge conducted an evidentiary hearing on the issue of jury impartiality.

The evidentiary hearing and the state trial court record reveal the following relevant facts. At the opening of voir dire in Mr. Gonzales's state prosecution, the judge addressed the prospective jurors and described the case as follows:

> The defendant stands charged with three separate offenses.... The information specifically charges that the defendant committed the following crimes. Count 1: Criminal sexual penetration in the first degree, in that the defendant did, on or about the nineteenth day of September, 1988, unlawfully and intentionally cause [the victim], who was not the defendant's spouse, to engage in sexual intercourse, anal intercourse, or the causing of penetration, to any extent and with any object, of the genital or anal openings of another by the use of force or coercion resulting in great mental anguish, contrary to our New Mexico statutes.
>
> Count 2: Assault with intent to commit a violent felony, in that the defendant did on or about the said date assault the victim with the intent to commit criminal sexual penetration in the first

degree and did so with a firearm, contrary to our New Mexico statutes.

Count 3: Extortion, in that the defendant did, on or about the said date, by communication or transmission threaten another, to wit the victim, by any means whatsoever with intent thereby to wrongfully compel the said person threatened to do or refrain from doing any act against her will, and said threat was to unlawfully injure the person threatened or another, and did so with a firearm, contrary to our New Mexico statutes.

In addition to what they learned about the alleged crimes from the trial judge's description, the prospective jurors were told during the course of voir dire that the victim's young daughter and niece also may have been victims. The jurors also learned that both the alleged victim and Mr. Gonzales had been drinking alcohol and that Mr. Gonzales contended his accuser consented to sexual intercourse.

During voir dire, a prospective juror indicated that two of her relatives had gone to trial on similar charges a few years before. In response to this revelation, the judge called the attorneys to the bench and explained: "It's relatively unusual to have a prospective juror who has an experience with her own family of similar types of cases. I'm inclined to excuse her for cause." Neither party objected, and the judge excused the juror.

-6-

After the judge excused three more prospective jurors, the clerk called Sandra Kieft as a prospective juror. During the voir dire of Ms. Kieft, the judge asked, "Ha[ve] you or has any member of your immediate family ever been involved in a similar type of, uh, incident?" Ms. Kieft responded, "No." The judge then asked Ms. Kieft, "Do you know of any reason Ms. Kieft why you could not serve as a fair and impartial juror in this case?" Though no answer is audible on the trial tape, the trial judge's response indicates Ms. Kieft answered no to this question. Neither Mr. Gonzales nor the state objected to Ms. Kieft serving on the jury, and she was empaneled.

During the evidentiary hearing before the federal magistrate judge, the magistrate judge heard the sworn testimony of Ms. Kieft and two other jurors who served on the jury that convicted Mr. Gonzales. This hearing revealed Ms. Kieft had been "date raped" in 1965. At the time, she was nineteen years old and in school.

Ms. Kieft testified she did not recall being asked, prior to serving on Mr. Gonzales's jury, whether she or any member of her family had been the victim of a crime similar to those charged against Mr. Gonzales. She testified that had she been asked that question she would have answered she was not such a victim.

-7-

Asked to elaborate on this answer, Ms. Kieft explained:

> I think the circumstances of the events of my past that I was referring to [were] very different from the circumstances that were represented in the case that we were hearing. The similarity was that alcohol was involved.
>
> The dissimilarities were that there was no weapon, I had willingly gone out with this person on a date. I had not had this person intrude into my home. I had no children who were present or who were involved at the time.
>
> The events were something that I would avoid in the future, but it was not something that traumatized my life.

Ms. Kieft testified her rape did not have a significant impact on her life other than to make her realize it "was a really bad situation" she would not want to be in again. Upon being asked whether her rape experience led her to identify with the victim in Mr. Gonzales's case, she answered: "I don't quite know how to answer that. I believe that I identified more with [the victim] than I did with Mr. Gonzales at the time, but I did not particularly personally identify with her." Ms. Kieft asserted her past experiences were not on her mind when she was trying to determine Mr. Gonzales's guilt or innocence.

When asked whether a discussion of her rape came up during jury deliberations in Mr. Gonzales's case, Ms. Kieft admitted she had mentioned her rape experience. Ms. Kieft explained:

-8-

As I recall -- this is many years ago -- there was a discussion within the jury that related to a woman's participation in a sexual interaction because of coercion. Where she had -- there's a possibility that she could have been put under such pressure that she simply would have allowed something to happen that she did not particularly want to have happened, but some of the jurors had made a statement that a woman could not be raped if she did not want to be raped. That she couldn't be sexually penetrated if she didn't want it to happen. And if a woman had been raped it was because she wanted it.

I made this statement, I believe, that I did not agree with that opinion. That I had, myself, been in a circumstance, been in a circumstance where there had been sexual penetration and had certainly seemed to be the best option at the time. It was a forced sexual contact.

Ms. Kieft further explained:

In mentioning that this experience had happened, I did mention it because I was -- because I felt very strongly that other people's statement that, you know, a woman couldn't be forced into a situation she didn't want to happen. I felt that I had an experience that refuted that, and I had had an experience in my life that refuted that. That was one that came to mind. It was not something that I had been dwelling on or giving any thought to until that morning.

David Love, another juror at Mr. Gonzales's trial, also testified at the evidentiary hearing. Mr. Love remembered Ms. Kieft saying "a long time ago" she was the victim of what is now commonly known as a "date rape." Though Mr. Love did not remember very well the context in which Ms. Kieft's admission arose, he did remember it "was a very brief statement on her part" and occurred "fairly early in the deliberations." Asserting Ms. Kieft did not utilize her

experience "to interpret [Mr. Gonzales's] case," Mr. Love explained she may have brought up her rape "in terms of something that one of the male jurors had said." He said Ms. Kieft did not offer her experience as a justification for any argument she had made. Finally, Mr. Love testified that although he "was surprised that people who had been victims of similar or possibly similar circumstances would have been allowed on a jury," he "didn't think that it necessarily prejudiced the person one way or the other toward the outcome of this particular case." Mr. Love explained that had he felt a danger of prejudice, he "certainly would have" notified the trial judge.

Mary Lou Chavez was the third and final juror to testify at the evidentiary hearing before the magistrate judge. Though she remembered one of the other women on the jury saying she had been sexually assaulted, Ms. Chavez could not remember who this juror was. With respect to the context in which the discussion arose, Ms. Chavez explained: "At the time we were deliberating, she kind of said that she knew what [the victim] was going through because she had been assaulted."[3] Ms. Chavez did not recall the juror making any other statement about

---

[3] Ms. Chavez's testimony could be read as conflicting with that of Ms. Kieft and Mr. Love in that it suggests Ms. Kieft discussed her rape in the context of assessing what Mr. Gonzales's victim "was going through." Given the magistrate judge's findings as to Ms. Kieft's credibility, *see infra*, we reject such a reading.

what had happened to her.

After the evidentiary hearing, the federal magistrate judge issued proposed findings.  Noting the distinctions between Ms. Kieft's date rape experience and the circumstances that gave rise to Mr. Gonzales's prosecution, the magistrate judge found Ms. Kieft had not been dishonest in her response to voir dire questioning.  Rather, the magistrate judge suggested Ms. Kieft mistakenly, but honestly, failed "to respond to a question."  The magistrate judge also found Mr. Gonzales had not demonstrated Ms. Kieft was actually or presumably biased against him.  Based on these findings, the magistrate judge recommended Mr. Gonzales's habeas petition be dismissed with prejudice.  The district court adopted the magistrate judge's findings and dismissed Mr. Gonzales's petition with prejudice.  This appeal followed.

II.  *Analysis*

By mandate of the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury*."  U.S. Const., Amend. VI (emphasis added).  The right to an impartial jury is applicable to the various states by virtue of the Fourteenth Amendment.  *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (declaring

-11-

the failure to provide an impartial jury "violates even the minimal standards of due process"); *Hunley v. Godinez*, 975 F.2d 316, 318 (7th Cir. 1992). Though a litigant has no right to a perfect trial, "for there are no perfect trials," *Brown v. United States*, 411 U.S. 223, 231-32 (1973), due process requires "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Voir dire provides courts and defendants a mechanism for securing such a jury. In the words of the Supreme Court, voir dire "serves to protect [the right to an impartial jury] by exposing possible biases, both known and unknown, on the part of potential jurors.... The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." *McDonough Power Equip., Inc., v. Greenwood*, 464 U.S. 548, 554 (1984).

A. The *McDonough* Test

In the case where a party challenges the results of a trial on the basis of a juror's alleged untruthfulness in voir dire, the Supreme Court has articulated a two-part test. "[T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556; *see also Burton v. Johnson*, 948 F.2d 1150, 1155 (10th Cir. 1991) (recognizing *McDonough* test). A

-12-

party cannot satisfy the first part of this test merely by demonstrating a juror provided a "mistaken, though honest, response to a question." *McDonough*, 464 U.S. at 555 (such a rule would "insist on something closer to perfection than our judicial system can be expected to give"). Instead, as *McDonough* decrees, the party challenging the verdict must demonstrate the juror in question "failed to answer *honestly* a material question." *Id.* at 556 (emphasis added). It is clear to us the *McDonough* test is directed at intentionally incorrect responses. *See id.* at 554 (emphasizing "necessity of *truthful* answers by prospective jurors" (emphasis added)); *United States v. Edmond*, 43 F.3d 472, 474 (9th Cir. 1994) (holding juror's forgetfulness did not fall "within the scope of dishonesty as defined by *McDonough*"); *Edmond*, 43 F.3d at 474 (Van Sickle, J., concurring) (asserting *McDonough* requires "deliberate juror misconduct"); *United States v. Casamayor*, 837 F.2d 1509, 1515 (11th Cir. 1988) (defendant did not satisfy McDonough because failed to show juror "deliberately" withheld information), *cert. denied*, 488 U.S. 1017 (1989); *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984) (proper inquiry under *McDonough* is whether juror made "intentional misrepresentations" during voir dire). Thus, if a juror intentionally withheld a truthful response to a material question and an honest answer would have created "a valid basis for a challenge for cause," then the party challenging the verdict is entitled to a new trial. *McDonough*, 464 U.S. at 556.

-13-

Mr. Gonzales contends Ms. Kieft responded dishonestly when she answered "no" to whether she or any member of her family had ever been involved in an incident similar to the one giving rise to Mr. Gonzales's trial. The district court, in adopting the magistrate judge's proposed findings, found Ms. Kieft did not respond dishonestly to this question. The magistrate judge based his proposed finding on the differences Ms. Kieft perceived between her experience and the incident described to her during voir dire. In the magistrate judge's words:

> [A]ccording to Ms. Kieft, ... the circumstances of what had happened to her were ... different from those in the matter on trial. Ms. Kieft explained that some twenty-four years before her service as a juror, at about nineteen years of age, she had gone on a date with a school acquaintance. The acquaintance consumed a quantity of alcohol, as did Ms. Kieft, after which the acquaintance coerced Ms. Kieft into engaging in sexual intercourse. That encounter was described as a "date rape" by Ms. Kieft, although at the time such a term was not commonly used. There was no physical violence imposed on Ms. Kieft, no firearm was used by the acquaintance, there was no anal intercourse, and there were no additional victims in the form of children. Moreover, Ms. Kieft did not report the incident to the police, nor did she suffer any mental trauma from the incident. While it was not explicitly stated, it is clear that there was nothing in the Kieft experience that rose to the "shocking and repulsive evidence" discussed during voir dire and revealed at trial.

The magistrate judge concluded, "I find the testimony of Ms. Kieft on the issue before the court to be credible, based on her demeanor, the content of her testimony as it related to the other testimony given, and the record in the case." In other words, the magistrate judge found Ms. Kieft honestly believed her

-14-

experience was not similar to the incident described to her as the focus of Mr. Gonzales's trial. Thus, according to the magistrate judge and the district court, Ms. Kieft did not fail to answer honestly when she claimed not to have been involved in a similar incident.

The question of Ms. Kieft's honesty during voir dire and in her testimony before the magistrate judge is a factual determination we review only for clear error. *See Patton v. Yount*, 467 U.S. 1025, 1036-38 & 1037 n.12 (1984) (trial court's determination of juror bias during voir dire is question of fact); *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (findings based on the credibility of witnesses are reviewed with great deference because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"). As the Supreme Court has explained,

> "[t]he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a *question of fact*, except in a clear case."

*Patton*, 467 U.S. at 1037 n.12 (quoting *Reynolds v. United States*, 98 U.S. 145, 156-57 (1878)) (emphasis added).

Our review of the record leads us to conclude the district court did not clearly err when it found Ms. Kieft did not fail to answer honestly when she denied involvement in an incident similar to the one that gave rise to Mr. Gonzales's prosecution. The apparent sincerity of Ms. Kieft's testimony at the hearing, the differences between her rape experience and the experience of Mr. Gonzales's victim, and the corroboration of Ms. Kieft's testimony by the testimony of Mr. Love and Ms. Chavez provide ample support for the district court's finding. Though in a perfect world Ms. Kieft might have answered the trial court's question affirmatively, the most that can be said of her response is that if it was a mistake at all, it was an honest mistake. Given the potential for subjectivity inherent in the word "similar," we are reluctant even to characterize Ms. Kieft's response as a mistake.

Since Mr. Gonzales has not demonstrated Ms. Kieft failed to answer honestly a material question in voir dire, he cannot satisfy the *McDonough* test.[4]

---

[4] Just because a juror responds honestly, but incorrectly, to a voir dire question does not foreclose the possibility of bias. "One easily can imagine cases in which a prospective juror provides what he subjectively believes to be an honest answer, yet that same answer is objectively incorrect and therefore suggests that the individual would be a biased juror in the particular case." *McDonough*, 464 U.S. at 559 (Brennan, J., concurring). Though a defendant cannot prevail under *McDonough* in such a situation -- because the juror has not been dishonest -- we believe the doctrines of actual and implied bias, *see infra*, provide defendants adequate Sixth Amendment protection in such cases.

Thus, we cannot grant his habeas petition on that ground. As we explain below, however, our inquiry does not end here.

B. *Actual or Implied Bias*

Though the test articulated by the Supreme Court in *McDonough* serves as the primary means for assessing cases where a juror allegedly responds untruthfully during voir dire, it does not provide the exclusive analysis for such cases. Cases such as this one -- based on allegations of dishonest voir dire answers -- fall within a larger category that comprises all cases of alleged juror partiality, whatever the source of partiality. Though a petitioner in the position of Mr. Gonzales has available the *McDonough* analysis, he is not "foreclose[d] [from] the normal avenue of relief available to a party who is asserting that he did not have the benefit of an impartial jury." *McDonough*, 464 U.S. at 556 (Blackmun, J., concurring); *Zerka v. Green*, 49 F.3d 1181, 1186 n.7 (6th Cir. 1995); *Amirault v. Fair*, 968 F.2d 1404, 1405-06 (1st Cir.), *cert. denied*, 506 U.S. 1000 (1992). This "normal avenue of relief," rather than focusing on the honesty of a juror's voir dire answers, asks more directly whether the juror was biased against the defendant. As Justice Blackmun explained,

regardless of whether a juror's answer is honest or dishonest, it

remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred.

*McDonough*, 464 U.S. at 556-57 (Blackmun, J., concurring); *see also Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias"); *Smith*, 455 U.S. at 221 (O'Connor, J., concurring) (expressing her "view that the [majority] opinion does not foreclose the use of 'implied bias' in appropriate circumstances"); *United States v. Wood*, 299 U.S. 123, 133 (1936); *Zerka*, 49 F.3d at 1186 n.7; *Amirault*, 968 F.2d at 1405-06.

In Mr. Gonzales's case, the magistrate judge and the district court determined Ms. Kieft was neither actually nor impliedly biased against Mr. Gonzales. In this appeal, Mr. Gonzales challenges both these determinations. Whether a juror was actually biased is a factual question we review only for clear error. *See Patton*, 467 U.S. at 1036 (in federal habeas corpus review of state conviction, state court determination as to partiality of individual juror is entitled to presumption of correctness due factual findings)[5]; *Hunley*, 975 F.2d at 318

---

[5] Though *Patton* concerns the situation where a federal court is reviewing the determination of a state trial court, we see no reason why the question would not still be a factual one when decided in the first instance at the federal district court level after an evidentiary hearing. That the determination is made by a

("the question of whether an individual juror is biased is a factual determination"). Whether a juror was impliedly biased is a legal question we review de novo. *Smith*, 455 U.S. at 222 n.* (O'Connor, J., concurring); *Burton*, 948 F.2d at 1158.

After reviewing the transcript of Mr. Gonzales's evidentiary hearing before the federal magistrate judge, we conclude the magistrate judge and the district court did not clearly err in finding Ms. Kieft harbored no actual bias against Mr. Gonzales. Ms. Kieft testified her rape experience was not on her mind when she was trying to determine Mr. Gonzales's guilt or innocence. She also testified she was able to set aside her feelings about her rape in determining Mr. Gonzales's guilt. Given the deference we owe the district court and the finding that Ms. Kieft was a credible witness, we are satisfied the district court's finding was permissible in light of the evidence. *See Anderson*, 470 U.S. at 575 (factual findings based on determinations of witness credibility demand great deference); *Bill's Coal Co. v. Board of Pub. Util.*, 887 F.2d 242, 244 (10th Cir. 1989) (district

_____

federal district court after an evidentiary hearing does not change the fact it is "essentially one of credibility, and therefore largely one of demeanor." *Patton*, 467 U.S. at 1038. Only the judge who personally witnesses the testimony "can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575.

court's finding need only be permissible in light of the evidence).

In contending Ms. Kieft harbored an actual bias against him, Mr. Gonzales places great emphasis on the fact that she brought up her rape experience during deliberation. Why, asks Mr. Gonzales, would Ms. Kieft talk about her rape experience if she were not using it in her calculation of his guilt or innocence? Mr. Gonzales's question is a valid one. The answer to his question can be found in the hearing transcript. The hearing revealed Ms. Kieft's discussion of her rape experience was "a very brief statement" that came up early in the deliberations. As Ms. Kieft explains the context, some of the jurors began talking in the abstract about whether "a woman" -- not Mr. Gonzales's victim in particular--could be "sexually penetrated if she didn't want it to happen." One of the male jurors opined "a woman could not be raped if she did not want to be raped" and that if a woman were sexually penetrated it "was because she wanted it." Ms. Kieft strongly disagreed with this opinion and drew on her personal rape experience to bolster her view that a woman could be sexually penetrated against her will. Placed in this context, we see no reason to disbelieve Ms. Kieft's assertion that she did not draw on her feelings about her own rape experience when she was contemplating Mr. Gonzales's guilt or innocence. Ms. Kieft merely used her experience to challenge another juror's shockingly wrongheaded opinion that

women cannot be forced to have sexual intercourse if they do not want to. *Cf.*

*State v. Larue*, 722 P.2d 1039, 1042 (Haw. 1986) (juror "was vouching for, and

attempting to secure the acceptance by the jury of, the reliability of the statements

of the minor [child molestation victims] as to their sexual molestation by

appellant, based not upon evidence in the record, or their appearance on the stand,

but upon her own similar personal experience and recollection thereof"). If

anything, Ms. Kieft was trying to rid the deliberative process of an actual bias,

not inject one.

We now turn to Mr. Gonzales's contention that Ms. Kieft was impliedly

biased against him. Whether implied bias exists in a juror is a legal

determination, *Burton*, 948 F.2d at 1158, that turns on an objective evaluation of

the challenged juror's experiences and their relation to the case being tried. As

one court has explained, the concept of implied or presumed bias arises from

"situations in which the circumstances point so sharply to bias in a particular juror

that even his own denials must be discounted." *United States v. Nell*, 526 F.2d

1223, 1229 n.8 (5th Cir. 1976). Thus, implied bias may be found even though a

juror denies any partiality. A finding of implied bias in the face of a juror's

denials is not, however, tantamount to a finding that the juror has lied. As Justice

O'Connor has observed, "[d]etermining whether a juror is biased or has prejudged

a case is difficult, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it." *Smith*, 455 U.S. at 221-22 (O'Connor, J., concurring). Though a juror might honestly believe she can be impartial, she nevertheless may have "such a close connection to the circumstances at hand that bias must be presumed." *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988).

The implied bias doctrine should not be invoked lightly. It must be reserved for those "extreme" and "exceptional" circumstances that "leav[e] serious question whether the trial court ... subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice." *Smith*, 455 U.S. at 222 & n.* (O'Connor, J., concurring); *see Hunley*, 975 F.2d at 320 ("the 'implied bias' test should rarely apply"). According to Justice O'Connor, situations that would support a finding of implied bias "might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith*, 455 U.S. at 222 (O'Connor, J., concurring).

Though Justice O'Connor seems to have in mind situations in which the

juror has a personal connection to the parties or circumstances of the trial, it is well established that implied bias also may be found on the basis of similarities between the juror's experiences and the facts giving rise to the trial. *Hunley*, 975 F.2d at 319 ("courts have presumed bias in cases where the prospective juror has been the victim of a crime or has experienced a situation similar to the one at issue in the trial") (citing several examples); *see, e.g.*, *Burton*, 948 F.2d at 1158-59 (implying bias based on similarities between juror's and defendant's experiences as victims of spousal abuse). Contending this is such a case, Mr. Gonzales urges us to conclude Ms. Kieft was impliedly biased because of the similarities between her rape experience and the incident giving rise to his prosecution. Mr. Gonzales argues:

> Kieft's rape and [the victim]'s alleged rape were similar in the critical respects that would affect Kieft's evaluation of Gonzales's consent defense. According to [the victim]'s and Kieft's accounts, each incident involved forced criminal sexual penetration; the rapist in each case was someone the victim knew; in each instance, prior to the rape, the assailant and the victim engaged in consensual social activity; in each situation, both participants voluntarily drank alcohol to excess; in each situation, the victim initially failed to report the rape.

> [Mr. Gonzales's] defense hinged on attacking [he victim]'s credibility. In particular, the defense contended it was unlikely that [the victim]'s sexual intercourse with Gonzales was nonconsensual when she voluntarily allowed Gonzales into her apartment, voluntarily played a drinking game with him, voluntarily became extremely intoxicated with him, and denied she was raped when first questioned by the police. Kieft's assessment of that issue was necessarily affected by her own experience .... Kieft had a very

personal experience which inevitably colored her perception of Gonzales's defense, as well as created an emotional link with [the victim].

In support of his argument, Mr. Gonzales points us to several decisions in which courts have found implied bias based on similarities between a juror's experiences and the circumstances giving rise to the trial. These include *Hunley*, 975 F.2d 316; *Burton*, 948 F.2d 1150; *United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979); *Jackson v. United States*, 395 F.2d 615 (D.C. Cir. 1968); and *United States ex rel. De Vita v. McCorkle*, 248 F.2d 1 (3d Cir.)*, cert. denied*, 355 U.S. 873 (1957).[6] Mr. Gonzales rests his argument primarily on our decision in *Burton*, and for good reason given that it is the only of the above decisions we are compelled to view as more than non-binding persuasive authority.

*Burton* arose from Ms. Burton's fatal shooting of her husband. In her trial for first degree murder in New Mexico, Ms. Burton admitted shooting her

---

[6] Mr. Gonzales also cites *United States v. Allsup*, 566 F.2d 68 (9th Cir. 1977), in which the court presumed bias in two jurors who worked for one of the banks the defendant was accused of robbing. In our view, *Allsup* should be viewed as a case in which bias was presumed because of a personal connection between the jurors and the case. Thus, rather than a case in which the juror had experiences analogous to those giving rise to the trial, *Allsup* is more akin to the situations contemplated by Justice O'Connor in her concurrence to *Smith*. Though this distinction does not bear on *Allsup*'s persuasive integrity, it does, in our view, remove *Allsup* from the factual category comprised of the above cited cases.

husband but claimed her actions were justified "because she believed from his past actions that she and her children were in immediate danger of great bodily harm, sexual abuse and death." *Burton*, 948 F.2d at 1151. During voir dire, Ms. Burton's counsel "discussed child abuse, rape, wife beating, the reporting of violent acts against women and the subject of self-defense." *Id.* at 1152. Her attorney also "specifically asked which [prospective] jurors had personally seen the effects of child abuse." *Id.* After one juror, a Ms. Green, admitted having substantial experience with abused children and the effects of child abuse, Ms. Burton's attorney asked "whether anyone else had ... had contact with child abuse or sexual abuse." *Id.* There was no response. At Ms. Burton's request, the trial judge dismissed Ms. Green for cause. *Id.* at 1153.

At trial, Ms. Burton brought forward evidence of her husband's "repeated physical, sexual and verbal assaults upon her and her two children, together with evidence that she suffered from 'battered woman's syndrome.'" *Id.* at 1151. The prosecution introduced evidence that Ms. Burton planned the murder in advance and was not defending herself or her children. *Id.* The jury found Ms. Burton guilty of first degree murder. *Id.* After the jury returned its verdict, Ms. Burton's attorney learned one of the jurors had been the victim of "long-standing" spousal abuse and was still married to the abuser. *Id.* at 1154. In an affidavit, this juror

stated "she had 'been the subject of wife abuse in the past and (is) presently subject to abuse to a lesser degree.'" *Id.* The juror said her husband verbally and physically abused her and her children. She confided one of her children was receiving counseling for problems related to the abuse. *Id.* The juror asked "that her name and testimony be kept secret because she feared her husband might abuse her and her children if he found out" about her admissions. *Id.* When this juror was asked in a hearing why she did not admit to experience with spouse and child abuse during voir dire, she "'testified that when asked about child abuse she did not connect her abusive experiences with the voir dire discussion and that she tried not to think of her own situation by pushing her thoughts of her abusive experiences to the edge of her consciousness.'" *Id.* at 1158 (quoting a federal magistrate judge's proposed findings).

Concluding this juror's presence on the jury violated Ms. Burton's right to an impartial jury, we affirmed the district court's decision to grant Ms. Burton's petition for a writ of habeas corpus. We supported our decision in *Burton* with two basic rationales. First, we concluded the juror was impliedly biased. *Id.* at 1158-59. Second, we determined the juror's "failure to respond on *voir dire* denied Mrs. Burton a fair trial under the *McDonough* test." *Id.* at 1159. We reached our implied bias conclusion partly because of "the similarities of the

experiences of Ms. Burton and the juror," noting that "the abuse, both mental and physical, continued over a long period of time and that the juror, at the time of trial, was living in an abusive situation, fearing her husband's violent temper even at the time she was testifying in chambers." *Id.* We also relied on our agreement with a federal magistrate judge that the juror was dishonest in responses to voir dire questions. We explained "[t]his dishonesty, of itself, is evidence of bias." *Id.* After concluding the juror was impliedly biased, we next went on to "likewise find" that Ms. Burton had satisfied the *McDonough* test. Again, as required by *McDonough*, we relied on the juror's dishonesty in voir dire. *Id.*; *see McDonough*, 464 U.S. at 556 ("a party must first demonstrate that a juror failed to answer honestly a material question on voir dire").

Mr. Gonzales contends that *Burton*'s implied bias analysis applies squarely to his case and requires that we grant his petition for a writ of habeas corpus. Aside from highlighting the similarities between the incident giving rise to his prosecution and the circumstances of Ms. Kieft's rape experience, Mr. Gonzales urges us to find implied bias because Ms. Kieft responded dishonestly to voir dire questions. As we have already discussed in our *McDonough* analysis, *supra* II.A, we are not prepared to reverse the district court's finding that Ms. Kieft responded honestly in voir dire. This decision hardly means Mr. Gonzales's implied bias

argument under *Burton* must fail. Though a juror's dishonesty in voir dire may be considered in an implied bias inquiry, it is not necessary to an implied bias finding. Such dishonesty is just one factor to be considered. *See McDonough*, 464 U.S. at 558 (Brennan, J., concurring); *Hunley*, 975 F.2d at 320. The crux of the implied bias analysis in a case like this one is found in an examination of the similarities between the juror's experiences and the incident giving rise to the trial. We are looking for similarities that would inherently create in a juror a "substantial emotional involvement, adversely affecting impartiality." *Allsup*, 566 F.2d at 71; *see Burton*, 948 F.2d at 1159 (noting "the inherently prejudicial nature" of the juror's own situation); *see also Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988) (inquiring whether "it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances"), *cert. denied*, 489 U.S. 1011 (1989). Accordingly, we now consider the similarities between Ms. Kieft's rape experience and Mr. Gonzales's case.

Of course, the most striking similarity between Ms. Kieft's experiences and Mr. Gonzales's case is that each involved nonconsensual sexual penetration. That is, both women were raped. Thus, we begin by asking whether juror bias must be presumed in a rape trial if the juror has been a rape victim. In other words, is a rape victim as a matter of law incapable of being impartial in the trial of an

accused rapist? We think not. As the Ninth Circuit wisely admonishes, "[p]rudence dictates that courts ... should hesitate before formulating categories of relationships which bar jurors from serving in certain types of trials." *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990), *cert. denied*, 498 U.S. 1091 (1991). To hold that no rape victim could ever be an impartial juror in a rape trial would, we think, insult not only all rape victims but also our entire jury system, which is built upon the assumption that jurors will honestly try "to live up to the sanctity of [their] oath." *Dennis v. United States*, 339 U.S. 162, 171 (1950). Rather than presume bias in any rape victim who is called as a prospective juror in a rape trial, we prefer an approach that focuses more closely on the particular juror's experience. As Justice O'Connor explained, "each [implied bias] case must turn on its own facts." *Smith*, 455 U.S. at 222 (O'Connor, J., concurring). In examining the juror's experience, we should look for how the experience affected the juror and what similarities exist between the juror's experience and the case at trial.

Ms. Kieft's rape occurred in 1965 when she was nineteen years old and in school. She went on a date with someone she knew from school, and on this date the man forced her to have sexual intercourse. Alcohol was involved, though it is not clear to what degree. The man did not use a weapon, and he did not strike or

bind Ms. Kieft. Given there is no indication of a criminal investigation or prosecution, Ms. Kieft apparently did not report the incident to police. She sought no counseling of any sort after the incident. When asked why she did not seek counseling, Ms. Kieft explained, "although I had regretted what had happened that evening, it wasn't such a big deal that it caused me any particular trauma." Ms. Kieft testified she did not suffer nightmares as a result of the experience, and did not remember being angry, though she was "unhappy that it happened." Finally, Ms. Kieft explained her experience did not affect her ability to enter into friendships or sexual relationships with men.

We now turn to the incident giving rise to Mr. Gonzales's trial. The victim testified that after she became intoxicated and had resisted Mr. Gonzales's advances, he knocked her to the floor and rendered her unconscious. She awoke to find Mr. Gonzales raping her. Her daughter was standing nearby crying. The victim pushed Mr. Gonzales off her. According to the victim's testimony, Mr. Gonzales then forced her to submit to anal intercourse by threatening her daughter and niece. Mr. Gonzales eventually left the apartment. The police were notified by the victim's boyfriend, who had arrived at the apartment later that evening and discovered the victim sitting half naked on the bedroom floor next to a pool of vomit. She was visibly intoxicated. The victim told her boyfriend Mr. Gonzales

had raped her. Over her protestations, he called the police. Because the victim was heavily intoxicated and completely uncooperative, the police took her into protective custody. The victim eventually consented to being taken to a hospital. The examining doctor observed that the victim's general psychological condition was very poor. She was disheveled, cowering, and very apprehensive. The physical exam revealed no signs that excessive force had been applied to the victim's vagina or rectum. When questioned by police, Mr. Gonzales admitted having sex with the victim but claimed it was consensual.

Mr. Gonzales contends Ms. Kieft's and the victim's rapes "were similar in the critical respects that would affect Kieft's evaluation of Gonzales's consent defense." Mr. Gonzales cites several similarities between the two incidents: (1) forced sexual penetrations; (2) the victim knew the rapist; (3) prior to the rape the victim and assailant engaged in consensual social activity; (4) consumption of alcohol; and (5) the victim did not report the rape.

Though Mr. Gonzales points out several superficial similarities between Ms. Kieft's experience and the incident for which he was tried, we are not convinced Ms. Kieft's experience rendered her impliedly biased as a matter of law. First, looking to the effects of her experience, Ms. Kieft's testimony

supports a finding that the rape did not have a detrimental life-changing impact on her life. Ms. Kieft explained that though she regretted being raped, the experience did not anger her or cause her any "particular trauma." She did not report the incident to authorities and did not seek counseling. The rape did not affect her ability to enter relationships with men. Rape is a traumatic and heinous violation of personal integrity and autonomy, *see Coker*, 433 U.S. at 597, but under the circumstances of this case we cannot say Ms. Kieft's rape experience rendered her biased against Mr. Gonzales.

This case is different from *Burton*, where the juror was enduring fearfully an abusive relationship during trial. The circumstances of Ms. Kieft's rape, however, do not, of themselves, justify a finding of implied bias. We think the similarities between her experience and the victim's, as highlighted by Mr. Gonzales, require something more. Thus, we now turn to the period of time that passed between when Ms. Kieft was raped and when she sat on Mr. Gonzales's jury. Ms. Kieft's rape happened in 1965, and she did not become a juror in Mr. Gonzales's trial until approximately twenty-five years later. Certainly, the passage of a quarter-century argues against presuming Ms. Kieft was biased. *See Casamayor*, 837 F.2d at 1515 (no presumption of bias where juror honestly failed to disclose he had received police training twenty-three years prior to trial); *State*

*v. Olson*, 508 N.W.2d 616, 618 (Wis. Ct. App. 1993) (no implied bias where juror was childhood victim of sexual abuse thirty years before trial), *review denied*, 515 N.W.2d 715 (Wis. 1994); *see also Amirault*, 968 F.2d at 1406 (no implied bias where juror had blocked her memory of being raped forty years earlier). When we take Ms. Kieft's rape testimony regarding the impact the rape had on her life and place it alongside the passage of twenty-five years, we are left with little justification for the conclusion she was presumedly biased in Mr. Gonzales's trial.

Lastly, we note Ms. Kieft never reported her rape and therefore apparently never underwent the experience of being the accuser in a case where the alleged rapist was claiming she consented to sexual intercourse. Mr. Gonzales contends the similarities between Ms. Kieft's rape and the incident giving rise to his trial make it highly unlikely Ms. Kieft could be unbiased on the issue of whether the victim consented. Mr. Gonzales's argument would have more strength if Ms. Kieft had faced the situation where her assailant had tried to shift the blame to her by claiming she consented. That is not the situation in this case. Given the particular facts and circumstances of this case, we conclude we cannot presume as a matter of law Ms. Kieft was a biased juror in Mr. Gonzales's trial.

Because Mr. Gonzales has not satisfied the *McDonough* test and has not

shown either actual or implied bias, we **AFFIRM** the judgment of the district court.