**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 23 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DARWYN RHON HOREY,

    Defendant-Appellant.

No. 96-6327

(D.C. No. CR-96-55-M)
(W.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before BALDOCK, KELLY, and BRISCOE, Circuit Judges.[**]

A jury convicted Defendant Darwyn Rhon Horey on one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Defendant to concurrent terms of 360 months imprisonment on Count I, and 120 months imprisonment on Counts II & III respectively. In this direct

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. 34.1.9. The case is therefore ordered submitted without oral argument.

criminal appeal, Defendant asserts that the evidence against him was insufficient to support the jury's verdict, and the district court erred in admitting evidence of prior bad acts and denying his motion for a new trial based on juror misconduct. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## I.

We review a challenge to the sufficiency of the evidence de novo. United States v. Wiles, 102 F.3d 1043, 1063 (10th Cir.), on rehearing in part 106 F.3d 1516 (10th Cir.), petition for cert. filed 65 U.S.L.W. 3632 (March 10, 1997). In determining the sufficiency of the evidence, we review the record in a light most favorable to the government and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Johnson, 120 F.3d 1107, 1108 (10th Cir. 1997). While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt. United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994). We do not function as a jury. Instead, we are required to accept the jury's resolution of conflicting evidence and its assessment of the witnesses' credibility. United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir. 1997). Applying this standard, the record reveals the following facts.

During the late morning of February 21, 1996, Sergeants Kenneth Davis and Ken Stepien of the Oklahoma City Police Department responded to a report of a domestic

disturbance involving a gun at the Hillcrest Green Apartments. A young woman by the name of Barbara Ellis met the officers in the parking lot of the apartment complex. She informed them that she was visiting her cousin, Veronica Ware, when Ware's boyfriend became upset and began threatening Ellis with what she described as an Uzi. Ellis directed Sergeants Davis and Stepien to Ware's apartment where the incident took place.

Upon entering through the front door of the apartment, which was open, the officers observed Ware and her two small children sitting on a couch. Sergeant Davis informed Ware of Ellis' complaint and asked her if any firearms were in the apartment. Ware responded no. When Sergeant Davis asked if her boyfriend was in the apartment or lived there, Ware likewise responded no. Ware then agreed to allow the officers to look through the apartment.

Sergeant Stepien was unable to open the first bedroom door in the hallway. After looking in two other bedrooms at the end of the hall and finding no one, he returned to the first door. As Sergeant Stepien pushed on the door, the sole of a tennis shoe protruded from underneath the door. Both officers drew their weapons. Sergeant Davis instructed the subject to come out of the room but received no response. He then instructed Ware and her two children to step outside for their safety. Ware refused to do so. Sergeant Davis radioed for backup. A few seconds later, Defendant came out of the first bedroom.

Sergeant Davis directed Defendant to the dining room for questioning. Upon questioning, Defendant became agitated. Sergeant Davis then handcuffed him without

3

incident. When Sergeant Stepien stepped outside to speak with the apartment complex's manager, however, Defendant stood up and attempted to leave. Sergeant Stepien returned to assist Sergeant Davis. The officers took Defendant outside where he continued to struggle. Defendant calmed down only after Sergeant Davis threatened to mace him. Shortly thereafter a Lieutenant Evans and Officer Smythe arrived on the scene.

Sergeant Davis returned to the apartment with Lieutenant Evans and Officer Smythe. Sergeant Stepien remained with Defendant. Ware allowed the officers to look for a weapon in the first bedroom. Defendant previously had indicated to Sergeant Davis that he had a large sum of money in the bedroom which his Aunt had given him. In the bedroom, the officers found a jacket which Ware said belonged to Defendant. Inside the jacket, Sergeant Davis located more than $950.00 in cash which Ware claimed was hers. On the floor next to the jacket, he found a set of keys, a gold ring, and a small amount of crack cocaine inside a wax paper wrapping. At that point, Lieutenant Evans asked Ware if she would sign a search waiver allowing the officers to search the entire apartment for both guns and narcotics. Although Ware refused to sign the waiver, she verbally consented in the presence of the complex's manager to a search of her apartment.

During the search, Sergeant Davis noticed that one of the ceiling tiles in the master bedroom's closet was out of place. Standing on a chair, the officer moved the ceiling tile and felt around the surrounding tiles. On top of the tiles, he recovered a phone card, Defendant's birth certificate, a bag of marijuana, a bag containing several individually

4

wrapped packages of crack cocaine, and an "Uzi type" weapon. Sergeant Davis then elevated himself further so he could view the area above the tiles. That's when he located a second weapon--a chrome Derringer.

Both Defendant and Ware were arrested and transported to the Oklahoma City jail. On the way, Sergeant Stepien informed Defendant of the guns and narcotics found in Ware's apartment. Defendant stated that they belonged to Ware. After arriving at the jail, Defendant informed Sergeant Stepien that he had dropped a set of keys in the back seat of the squad car. Upon removing the back seat to look for Defendant's keys, Sergeant Stepien recovered an additional quantity of crack cocaine. Once inside the facility, Sergeant Stepien informed Defendant of the crack cocaine under the back seat and asked if he had done any drugs the previous night. Defendant responded that he had done "an eight ball." The indictment against Defendant followed.

### A.

Based upon the foregoing, Defendant first claims the government failed to present evidence sufficient to support his conviction for possession of narcotics with intent to distribute under 21 U.S.C. § 841(a)(1). To obtain a § 841(a)(1) conviction, the government must prove the following elements beyond a reasonable doubt: (1) defendant knowingly possessed the illegal drug, and (2) defendant possessed the drug with the specific intent to distribute it. United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996). Possession may be either actual or constructive. "[C]onstructive possession may be found

5

if a person knowingly has ownership, dominion, or control over the narcotics and the premises where the narcotics are found." United States v. Jones, 49 F.3d 628, 632 (10th Cir. 1995). Where possession is not clear, such as when the contraband may be attributed to more than one individual, constructive possession requires some nexus, link, or other connection between defendant and the contraband. United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). While an inference must be more than speculative, a jury may draw reasonable inferences from direct or circumstantial evidence. United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995).

Based upon our record review, we have no trouble concluding that the evidence is sufficient to support Defendant's conviction under 21 U.S.C. § 841(a)(1). At trial, Defendant stipulated that the tan caked substance which officers recovered from Ware's residence constituted over 220 grams of cocaine base. The evidence further established that Defendant constructively possessed the cocaine. Sergeant Davis first located a small wrapper containing 6.5 grams of cocaine next to Defendant's jacket in the bedroom where he had attempted to hide. Sergeant Davis then located more than 214 grams above the ceiling tiles in the master bedroom where Defendant slept when staying with Ware, which apparently was more than occasionally. When asked his actual residence, Defendant could be no more specific than "somewhere on Northwest Tenth." Finally, Officer Stepien located approximately two grams of cocaine base underneath the back seat of the

6

squad car where Defendant had been sitting. Defendant literally left a "trail" of cocaine during the course of the incident.

The cocaine found in the master bedroom was packaged in individually wrapped portions similar to that found in the first bedroom. Officers located Defendant's birth certificate next to the cocaine in the master bedroom. Despite Defendant's assertions to the contrary, he had ample time to conceal the cocaine between the time Ellis phoned the police and the time they arrived on the scene. Although Sergeants Davis and Stepien were in the vicinity at the time of Ellis' call, Sergeant Stepien testified that they had to travel fifteen blocks to the scene. Defendant could have placed the cocaine in the ceiling in a matter of seconds. The evidence is sufficient to support the jury's finding that Defendant exercised dominion and control over the cocaine and thus constructively possessed it. See United States v. Simpson, 94 F.3d 1373, 1380 (10th Cir.) (constructive possession defined as "an appreciable ability to guide the destiny of a drug"), cert. denied, 117 S. Ct. 411 (1996).

The evidence is also sufficient to support the jury's finding that Defendant intended to distribute the cocaine. The cocaine found above the ceiling tiles was wrapped in small individual packages. Officers located firearms near the cocaine. Although Defendant was unemployed, officers found more than $950 in his jacket. The evidence further suggested that Defendant carried a pager. In United States v. Wilson, 107 F.3d 774, 779 (10th Cir. 1997), we relied upon these exact same factors to conclude that a jury

could reasonably find defendant possessed cocaine with an intent to distribute. We reach the same conclusion here.

B.

Defendant also claims the government failed to present evidence sufficient to support his convictions for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). The government must prove three elements beyond a reasonable doubt to obtain such a conviction. The government must prove that (1) defendant was convicted of a felony, (2) defendant thereafter knowingly possessed a firearm, and (3) possession of the firearm was in or affecting interstate commerce. United States v. Capps, 77 F.3d 350, 352 (10th Cir.), cert. denied, 116 S. Ct. 2568 (1996). The only knowledge required under § 922(g)(1) is knowledge that the instrument possessed is a firearm. United States v. Mains, 33 F.2d 1222, 1228 (10th Cir. 1994). Like possession of a controlled substance, possession of a firearm may be constructive as well as actual so long as defendant has dominion or control over the firearm. Wilson, 107 F.3d at 779-780. To support a finding of constructive possession, there must be "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon." Mills, 29 F.3d at 549.

As with his § 841(a)(1) conviction, we have no trouble concluding that the evidence is sufficient to support Defendant's convictions under 18 U.S.C. § 922(g)(1). At trial, Defendant stipulated that he was a convicted felon and the firearms affected

8

interstate commerce, thus satisfying the first and third elements of § 922(g)(1). The evidence also was sufficient to satisfy the second element of § 922(g)(1), i.e., that Defendant knowingly possessed the firearms, albeit constructively. Defendant claims the government failed to provide direct evidence of his possession such as fingerprints from either weapon. The government, however, may prove constructive possession of a firearm by circumstantial evidence so long as the evidence shows some nexus or connection between defendant and the firearm. United States v. Taylor, 113 F.3d 1136, 1145 (10th Cir. 1997).

Upon their arrival at the scene, Ellis described the weapon with which Defendant threatened her as an "Uzi" with holes along the barrel. At trial, she described it as an "automatic something" with "holes in it." The first weapon the officers recovered from above the ceiling tiles was a nine millimeter semi-automatic pistol with a fully loaded clip containing fifteen rounds. Sergeant Davis testified that the weapon was similar to an Uzi:

> Q. Based upon your experience and knowledge of firearms, if a lay person were to see that firearm could they describe it to someone else as similar to an Uzi?
>
> A. Yes, that's how I would describe it.

Tr. at 94. Given (1) Ellis' description of the weapon which Defendant brandished, (2) Sergeant Davis' testimony that Ellis' description of the weapon was consistent with the weapon actually recovered, and (3) the location of the weapon next to Defendant's

9

birth certificate and bag of cocaine above the ceiling tiles in the master bedroom, a jury could reasonably find that Defendant knowingly possessed the semi-automatic pistol.

We believe the evidence likewise was sufficient to establish that Defendant knowingly possessed the unloaded .32 automatic chrome Derringer. Officers located the weapon above the ceiling tiles in the same closet as the semi-automatic pistol, birth certificate, and cocaine. Ware testified she lived alone in the apartment with her two small children but did not own a gun. Demetria Smith, who Defendant was dating at the same time he was dating Ware, testified that Defendant told her he kept two guns at Ware's apartment. These facts when considered in a light most favorable to the government, support the "plausible inference that the [D]efendant had knowledge of and access to the weapon," Mills, 29 F.3d at 549, and therefore knowingly possessed it. Accordingly, we reject Defendant's challenge to the sufficiency of the evidence.

## II.

Defendant next claims the district court improperly permitted his former girlfriend, Demetria Smith, and her father, John Hornbeck, to testify about Defendant's prior bad acts.[1] According to Defendant, Smith and Hornbeck's testimony was inadmissible under Federal Rules of Evidence 402, 403, and 404, as irrelevant, highly prejudicial, and offered

---

[1] Because of concern for their personal safety, the court in a proper exercise of discretion allowed the government's motion to seal the identity of these witnesses and their Form 302 reports until directly prior to their testimony. A 302 report is an FBI agent's formal account of a witness interview filed on the FBI's Interview Report Form FD-302. United States v. Rivera, 900 F.2d 1462, 1473 n.15 (10th Cir. 1990).

only to show Defendant's criminal propensity. We review Defendant's challenge to the admissibility of these witnesses' testimony under Rules 402, 403, and 404 solely for an abuse of discretion. United States v. Reddeck, 22 F.3d 1504, 1508 (10th Cir. 1994).

Demetria Smith testified that she dated Defendant from August 1995 until mid January 1996. When she met Defendant, he was living with Ware. As previously noted, Smith stated that Defendant told her he kept two guns at Ware's apartment, but she had never seen Defendant with them. Smith also stated that she had seen Defendant in possession of his birth certificate in January 1996.

John Hornbeck testified that Defendant and his daughter Demetria Smith lived with him in Oklahoma City during the fall of 1995. Hornbeck stated that although Defendant did not have a job, he always had money. According to Hornbeck, Defendant had a pager which he used during this period to arrange crack cocaine deals. Hornbeck, a convicted crack cocaine addict, also obtained crack cocaine from Defendant on at least two occasions during this period and into December 1995. Around the same time, Hornbeck discovered that Defendant had stashed a substantial quantity of crack cocaine in the rain gutter above Hornbeck's garage. When Smith left Defendant in January 1996, Defendant attempted to find her by bribing Hornbeck with money and cocaine.

Rule 402 provides that "[a]ll relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by

11

the danger of unfair prejudice." Fed. R. Evid. 403. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404. Rule 404(b) further provides, however, that such evidence may be admissible for other reasons including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In United States v. Porter, 881 F.2d 878, 886 & n.8 (10th Cir. 1989), we added corroboration to this list of exceptions.

Before admitting evidence of prior bad acts under one of the exceptions to Rule 404(b)'s general proscription, we have urged district courts to determine on the record that the proffered evidence (1) tends to establish one of the Rule's exceptions, (2) is so related to the charged offense that it serves to establish the exception, (3) has real probative value rather than just possible worth, (4) is close in time to the charged offense, and (5) is not so prejudicial as to be excludable under Rule 403. See United States v. Robinson, 978 F.2d 1554, 1558-59 (10th Cir. 1992). In other words, "there must be a clear and logical connection between the alleged earlier . . . misconduct and the case being tried. A lack of clear association between the purported purpose for introduction of the evidence and the act itself renders the past . . . [misconduct] irrelevant, highly prejudicial and inadmissible." Id. at 1559 (internal quotations, citations and brackets omitted).

We have no difficulty sustaining the admission of Smith's testimony. Certainly Smith's testimony that Defendant lived with Ware in the fall of 1995 and owned two guns

which he kept at her apartment is relevant because it tends to make the fact that Defendant possessed the semi-automatic pistol and chrome Derringer found in Ware's apartment in the winter of 1996 more probable. See Fed. R. Evid. 401 (relevant evidence defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Moreover, Smith's testimony that Defendant kept two guns at Ware's apartment corroborates what the officer's found in Ware's apartment--two guns. The district court did not abuse its discretion in concluding that Smith's testimony fell within the corroboration exception to Rule 404(b), and had real probative value which was not substantially outweighed by the danger of unfair prejudice to Defendant.

Similarly, the district court did not abuse its discretion in permitting Hornbeck's testimony regarding Defendant's involvement with cocaine in the fall of 1995. Hornbeck's testimony that (1) Defendant always had money but no job, (2) carried a pager to facilitate drug transactions, and (3) sold him crack cocaine on multiple occasions, makes the fact that Defendant possessed the cocaine found in Ware's apartment with the intent to distribute more probable, and corroborates the reasonable inferences which may be drawn from the circumstantial evidence surrounding Defendants arrest in February 1996. Accordingly, we reject Defendant's challenge to the testimony of Demetria Smith and John Hornbeck.

## III.

Finally, Defendant claims that juror misconduct entitles him to a new trial. During voir dire, the court asked prospective jurors if any of them or "any close family member" had been convicted of a criminal offense. One juror answered no and subsequently was empaneled. After trial, Defendant learned that the son of the juror's brother-in-law had been convicted of a crime and was incarcerated, and that the same juror had been removed by peremptory challenge in another criminal case, presumably for this reason. Defendant moved for a new trial asserting a violation of his Sixth Amendment right to a fair and impartial jury. The district court denied Defendant's motion.

In <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 556 (1984), the Supreme Court set forth a two-part test to determine whether a new trial is warranted when a defendant alleges a juror's untruthfulness during voir dire: "[T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." <u>See</u> <u>United States v. Cattle King Packing Co., Inc.</u>, 793 F.2d 232, 243 (10th Cir. 1986) (applying <u>McDonough</u> in a criminal context). In <u>Gonzales v. Thomas</u>, 99 F.3d 978, 984-985 (10th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1342 (1997), a habeas action, we explained that the <u>McDonough</u> test is directed at intentionally incorrect responses: "A party cannot satisfy the first part of this test merely by demonstrating a juror provided a mistaken, though honest, response to a

14

question. Instead, as <u>McDonough</u> decrees, the party challenging the verdict must demonstrate the juror in question failed to answer <u>honestly</u> a material question." <u>Gonzales</u>, 99 F.3d at 984 (internal quotations and citations omitted) (emphasis in original).

Because Defendant has not demonstrated that the prospective juror failed to answer the court's questions honestly during voir dire, or was otherwise biased against him, he cannot satisfy the first prong of the <u>McDonough</u> test. The question of a juror's honesty during voir dire is a factual determination which we review only for clear error. <u>Gonzales,</u> 99 F.3d at 985. The district court found that the juror honestly answered its questions. This finding was not clearly erroneous. Reasonable minds might differ over the question of whether the son of a brother-in-law is a "close family member." Under some circumstances he might be; under others he may not. We have no quarrel with the district court's finding that the juror believed the latter rather than the former to be true in this case, and that the juror answered the court's questions during voir dire honestly.

For all the foregoing reasons, the judgment of the district court is

AFFIRMED.

Entered for the Court,

Bobby R. Baldock
Circuit Judge

15